## THURSTON v. UNITED STATES.
### No. 12264.

United States Court of Appeals
Ninth Circuit.
Jan. 10, 1950.

Nels Peterson, Portland, Or., for appellant.

Henry L. Hess, U. S. Atty., Floyd D. Hamilton, Asst. U. S. Atty., Portland, Or. ·(Wood, Matthiessen & Wood, Erskine B. Wood, Portland, Or., of counsel), for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

Appellant, a third assistant engineer on the Steamship Katherine S. Bates, suing the United States under the Clarification Act, 50 U.S.C.A.Appendix, § 1291 et seq., appeals from a decree denying him recovery from injuries sustained from his falling into an open hatch in his engine room, claimed negligently to have been left open, causing the ship to be unseaworthy in that respect. There is no question that the employment of appellant and his steamship bring the case within the provisions of the Clarification Act. Appellant also contends that an award for maintenance and cure is insufficient.

Appellee claims we cannot reach the merits of the appeal because appellant's suit was barred by the two year limitation of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The injury was sustained on July 10, 1946, and the libel filed on August 4, 1948, that is two years and 25 days later. The question is whether a cause of action on the seaman's claim "arises" (a) when the injury is received, and hence must be brought within two years thereafter under the Suits in Admiralty Act,[1] or (b) arises upon the administrative disallowance of the claim required by the Clarification Act to be filed with the War Shipping Administration.

The pertinent provisions of the Clarification Act, Section 1291, are:

"(a) Officers and members of crews (hereinafter referred to as 'seamen') employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to * * * (2) death, injuries, illness, maintenance and cure, loss of effects, detention, or repatriation, or claims arising therefrom not covered by the foregoing clause (1); * * * have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels.

" * * * Any claim referred to in clause (2) or (3) hereof shall, if administratively disallowed in whole or in part, be enforced pursuant to the provisions of the Suits in Admiralty Act [Title 46, §§ 741–752], notwithstanding the vessel on which the seaman is employed is not a merchant vessel within the meaning of such Act [said sections] * * * When used in this subsection the term 'administratively disallowed' means a denial of a written claim in accordance with rules or regulations prescribed by the Administrator, War Shipping Administration."

It is apparent that the provision for the disallowance of claims before beginning suit makes the seaman's right under the Clarification Act quite different from his right if employed on a "privately owned" vessel or under the Suits in Admiralty Act. Seamen in the latter two cases have the right to file their libels as soon as injured. Under the Clarification Act they must wait until their claims are filed and disallowed.

It is now long established that such legislation in favor of seamen must be construed strongly in their favor. A recent restatement is in Cosmopolitan Steamship Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 1321 where the court said: "The Jones Act [46 U.S.C.A. § 688] was welfare legislation that created new rights in seamen for damages arising from maritime torts. As welfare legislation, this statute is entitled to a liberal construction to accomplish its beneficent purposes. Compare Aguilar v. Sandard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011."

Applying this rule of construction, it is a rational interpretation of the word "claim," which is to be disallowed, that it is something other than the "cause of action" under the Suits in Admiralty Act, and

---

1. "Suits authorized by this chapter may be brought only on causes of action arising since April 6, 1917: *Provided,* That suits based on causes of action arising prior to the taking effect of this chapter shall be brought within one year after this chapter goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises." 46 U.S.C.A. § 745.

that the "claim" does not mature into the "cause of action" until its disallowance. There is nothing irrational in the concept that a cause of action does not arise until a court may entertain it.[2]

The Fifth Circuit sustained the dismissal of a seaman's libel where he had failed to file his claim with the administrator, the court stating: "The dismissal was proper, but since it was not on the merits, but for *prematurity*, it is of course without prejudice to the merits." (Emphasis supplied.) Fox v. Alcoa S. S. Co., 143 F.2d 667, 668, certiorari denied, 323 U.S. 788, 65 S.Ct. 313, 89 L.Ed. 628.

The War Shipping Administration regulation 302.24 requires the claim to be in writing, and Regulation 302.26 creates a presumption that the claim shall be disallowed if within 60 days of its filing the claimant is not notified of a determination thereon "and the claimant shall be entitled to enforce his claim by court action."

■ Here the appellant filed his written claim and the sixty days elapsed without notice of action thereon. If he had filed it on the day of his injury he would have had two years and 60 days "to enforce his claim by court action." As seen, the libel here was filed within two years and 25 days after the accident. We think it was filed in time.[3]

The regulations make no time limit on the filing of a claim. The reason for such failure well may be that an apparently slight injury may not develop into a serious disqualification in the seaman's service till many months after he is hurt. Whatever may be the reason for the failure to regulate the time of the claim, we think the late date here, April 16, 1948, of which appellee makes no point, followed by the timely suit, does not prevent recovery.

■ Appellant was injured by falling into an open hatch in the engine room floor.

The evidence is uncontradicted that some other member of the crew had negligently removed the hatch cover, leaving the hatch open. Appellant negligently failed in the performance of his duty to inspect the engine room, whereby he failed to discover the open hatch into which he fell. Although the negligence of someone else making the engine room floor unseaworthy continued until combined with negligent failure to inspect the floor, the district court held that appellant's negligence was the sole proximate cause of the injury and denied a recovery of divided damages.

We do not agree. The Supreme Court in Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, decided to the contrary that in such cases of negligent failure to perform a duty owed the ship, the doctrine of comparative negligence applies. There the negligent performance of an oiler's duty by using a defective step, of which he knew the defect, combined with the negligent failure of the ship to repair the step, with knowledge of the defect, caused the oiler's fall and injury. It was contended that the doctrine of assumption of risk applied to such negligent performance of the oiler's duty and not the admiralty rule of comparative negligence. As the Court stated, 305 U.S. at pages 424, 426, 425, 59 S.Ct. at page 263.

"The question is whether assumption of risk is a defense in a suit brought by a seaman under the Jones Act to recover for injuries resulting from his use, *while on duty*, of a defective appliance of the ship, when he chose to use the unsafe appliance instead of a safe method of doing his work, which was known to him."

"Respondent was employed as an oiler in petitioner's engine room. It was his *duty* while the vessel was under way to touch with his finger, at intervals of twenty minutes, a bearing of the propeller shaft, in

2. Cf. Dusek v. Pennsylvania R. Co., 7 Cir., 68 F.2d 131, 132; Pettibone v. Cook County, 8 Cir., 120 F.2d 850, 852; Yager v. Liberty Royalties Corp., 10 Cir., 123 F.2d 44, 47.

3. We note the bald dictum of Rodinciuc v. United States, 3 Cir., 175 F.2d 479, 481, that "The seaman has two years from the time of his injury to start suit." The question was not before that court and the contentions above considered not mentioned, including the primary consideration that the legislation must be construed in favor of the seaman.

 

order to ascertain whether it was overheating and in need of additional lubrication. Directly in front of the bearing, as he approached it, was an iron step, located about one foot above the engine room floor and bolted to the bedplate which supported the bearing * * *"

"* * * The fall was caused by a defective step on which respondent stood while on *duty,* when seeking to learn, by touching with his finger, whether an engine bearing was overheated.

"In submitting the case to the jury the trial court applied the admiralty rule of comparative negligence, instructing the jury that negligence of respondent contributing to the accident was not a bar to recovery but was to be considered in mitigation of damages. The court refused petitioner's request for an instruction that if respondent *could have performed his duty* without use of the defective step, he assumed the risk of injury from it. Instead, the court charged that there was no assumption of risk by the seaman where the shipowner failed in its duty to furnish a safe appliance." (Emphasis supplied.)

We are unable to see any difference between the oiler's negligence in failing in his duty to use the safe method of inspecting the shaft bearing's temperature and the failure of the appellant in his duty to inspect the engine room. In both cases prior negligence to supply a safe place to work due to the negligence of someone other than the injured seaman continued until the injury which was caused by the combined negligence.[4] Were the identity of the two cases not the same we would reach the same conclusion by applying the doctrine of liberal construction applicable to seamen's cases and stated in the Socony Vacuum case, supra, 305 U.S. 424, at page 431, 59 S.Ct. 262, 83 L.Ed. 265.

With regard to appellant's contention that the award for maintenance and cure is insufficient, we think the award is sustained by the evidence.

The decree is reversed and the cause remanded to the district court for a retrial of the issue of appellant's injuries pursuant to the principle above recognized.

4. If United States Steel Products Co. v. Noble, 2 Cir., 10 F.2d 89, cannot be distinguished on the ground that there was no prior negligence of another person than the injured engineer combining to cause the latter's injury, we regard it as overruled by the Socony Vacuum Oil case, supra. It is obvious that both in the case of the oiler in the Socony case and the instant engineer, if each had performed the duty for which the owner employed him neither would have been injured.