Carolyn **ROBERTS**, Individually, et al., Plaintiff-Appellees,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 73–2260.

United States Court of Appeals, Ninth Circuit,

June 6, 1974.

Rehearing Denied June 20, 1974.

---

Neil H. Koslowe (argued), Morton Hollander, James C. Hair, Jr., of Civil Div., Appellate Section, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Al Schallau (argued), Ian Herzog, Craig S. Dummit, Los Angeles, Cal., for plaintiff-appellees.

Before ELY, HUFSTEDLER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The United States appeals from an order denying its motion for dismissal of

the appellees' complaint. Because the motion raised a close jurisdictional question the District Court certified its order for an interlocutory appeal under 28 U.S.C. § 1292(b). The United States filed an application in this court to prosecute that appeal and we granted the application. Upon review of the applicable authorities we conclude that the court erroneously denied the Government's motion to dismiss.

This is a wrongful death action arising out of the crash of a Flying Tiger Lines cargo plane on July 27, 1970. The plane was approaching the Naha Air Base, Okinawa, for a ground controlled landing when it crashed in navigable waters 1500 to 1900 feet short of the runway. Charging that United States Air Force personnel negligently directed the landing and subsequent rescue operations, the widow and three minor children of the plane's navigator (appellees) filed suit against the United States on November 21, 1972.[1] Their original complaint was brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq., and sought $2,500,000 damages for wrongful death. The United States, however, successfully argued that because the tort was alleged to have occurred in Okinawa, the action was therefore barred by section 2680(k) of the FTCA which excludes "[a]ny claim arising in a foreign country." The District Court accordingly dismissed the suit but granted the appellees leave to amend.

In their subsequently amended complaint the appellees relied upon the same basic facts but stated them somewhat differently. The first cause of action was still based upon the FTCA. However, instead of alleging that the events occurred "at or near Naha Air Base, Okinawa, Ryukyu Islands" which would open the claim to the "foreign country"

exclusion of section 2680(k), the complaint alleged that the events occurred "while the aircraft was making an approach to landing . . . over the high seas crashing into navigable waters . . . ." Thus, the claim was asserted to be "maritime." A second cause of action was asserted as a "Maritime Wrongful Death" under the general admiralty and maritime jurisdiction, Fed.R.Civ.P. 9(h), and a third cause of action was alleged under the "Death on the High Seas Act," 46 U.S.C. §§ 761–767.

The specific acts of negligence relied upon were the same as to each of the three claims: that the United States negligently directed the landing of the aircraft and the subsequent rescue operations of its passengers.

The United States again moved to dismiss the action, arguing that the aviation crash did not give rise to a maritime claim. Secondarily, the Government contended that even if maritime jurisdiction were appropriate, the appellees' suit against the United States was cognizable solely under the Suits in Admiralty Act (SIA), 46 U.S.C. §§ 741–752, and not the FTCA as averred. The District Court rejected both of these arguments and concluded that it had jurisdiction to entertain the appellees' suit as a maritime wrongful death action under the FTCA.

■■ This appeal invites an examination of whether, under the circumstances shown here, an aviation tort claim is cognizable under maritime law. Preliminarily we note that if viewed as stating a "land" rather than a "maritime" tort, the appellees' complaint under the FTCA is indeed barred by 28 U.S.C. § 2680(k). *See* United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L. Ed. 3 (1949).[2] To therefore shift the

---

1. An administrative claim was filed on July 26, 1972, and rejected by the appropriate Federal agency on August 22, 1972.

2. Under the FTCA, a tort claim arises at the place where the negligent act or omission occurred and not where the negligence

had its "operative effect," (*i.e.*, the situs of injury). Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). An American military base located on foreign soil is fully within the foreign country exception (section 2680(k)), United States v.

locus of their claim from land to sea, the appellees rely upon two independent sources: the general maritime law, and a specific federal statute, the Death on the High Seas Act, 46 U.S.C. §§ 761–768.

■ As far as the general maritime law is concerned, Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) is necessarily the starting point in any effort to define a "maritime tort" in the aviation context. In *Executive Jet* the Supreme Court rejected the traditional locality test which found maritime jurisdiction whenever a tort occurred in navigable waters.[3] A literal application of this test over the years had brought aviation tort cases within admiralty jurisdiction depending, of course, upon where the aircraft crashed.[4] However, in *Executive Jet* the Supreme Court criticized the fortuity of this jurisdictional classification and announced a new twofold test for determining whether a maritime tort was pleaded. The Court retained the navigable waters locality prerequisite but added a maritime "nexus" requirement:

"... [W]e conclude that the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a 'maritime tort.' It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity." *Id.* 409 U.S. at 268.

The maritime claims asserted in *Executive Jet* arose from the crash of a chartered jet en route from Cleveland, Ohio to Portland, Maine. The aircraft struck and ingested a flock of seagulls on take-off and crashed in the navigable waters of Lake Erie. The Supreme Court had little difficulty in concluding that "a flight that would have been almost entirely over land and within the continental United States" bore an insufficient relationship with traditional maritime activity. However, the Court declined to generalize as to other aviation tort contexts, commenting instead:

"We need not decide today whether an aviation tort can ever, under any circumstances, bear a sufficient relationship to traditional maritime activity to come within admiralty jurisdiction in the absence of legislation. It could be argued, for instance, that if a plane flying from New York to London crashed in the mid-Atlantic, there

---

Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949), and this court has previously classified Okinawa as a foreign country for the purposes of the FTCA, Cobb v. United States, 191 F.2d 604 (9th Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952).

The *Cobb* classification was based upon the status of Okinawa as of 1949. We note that on May 15, 1972, after the cause of action in this suit arose, the island was returned to the empire of Japan. 23 U.S.T., Part 1 at 447.

3. A classic statement of the locality test appears in The Plymouth, 3 Wall. 20, 36 (1855); "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." The durability of this test is reflected by the fact that the Supreme Court approvingly applied the locality standard in the term immediately prior to the *Executive Jet* decision. Victory

Carriers, Inc. v. Law, 404 U.S. 202, 205 (1971).

A distinct problem is the determination of where an aviation tort "occurs." Unlike the rule developed under the Federal Tort Claims Act, see *supra*, n. 2, in applying the maritime locality test a tort is deemed to occur not where the wrongful act or omission had its inception, but at the place where it became operative, *i.e.*, place of injury. Oppen v. Aetna Insurance Co., 485 F.2d 252, 256 (9th Cir. 1973); Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967); Wilson v. Transocean Airlines, 121 F.Supp. 85, 92 (N.D.Cal.1954). The Supreme Court in *Executive Jet, supra*, discussed the difficulties inherent in determining tort locus in the aviation context, but the Court did not propose another test. *Id.* 409 U.S. at 266–268.

4. *See Executive Jet, supra* 409 U.S. at 264, n. 14.

would be admiralty jurisdiction over resulting tort claims even absent a specific statute. An aircraft in that situation might be thought to bear a significant relationship to traditional maritime activity because it would be performing a function traditionally performed by water-borne vessels." *Id.* 409 U.S. at 271.

The Supreme Court thus expressly reserved the question which is before us now.[5]

■ An examination of the record provides several bases for distinguishing the air accident in this case from the crash which occurred in *Executive Jet.* According to the appellees' amended complaint, the Flying Tiger Lines aircraft was engaged in transporting cargo between Los Angeles and Viet Nam; Okinawa was merely one of a number of intermediate stopping points. Geographic realities, therefore, do not make the cargo plane's contact with navigable waters entirely "fortuitous." More significantly, the transoceanic transportation of cargo is an activity which is readily analogized with "traditional maritime activity." Indeed, before the advent of aviation, such shipping could only be performed by waterborne vessels. We therefore do not interpret *Executive Jet, supra,* as precluding a maritime action on the facts of this case.

The appellees' alternate reliance upon the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761–768, is more questionable. Although the Supreme Court has explicitly sanctioned the bringing of aviation wrongful death cases under a literal construction of the DOHSA,[6] the facts alleged in the appellees' own brief cast doubt upon the statute's applicability. The appellees concede that the alleged tort occurred a maximum of 1900 feet from the Okinawa shore, *i. e.*, in presumably foreign territorial waters. In view of the somewhat ambiguous language of the statute itself and the apparent lack of authority on the point, we hesitate to conclude whether a tort occurring within foreign territorial waters comes within the purview of the Death on the High Seas Act.[7]

---

5. We find little assistance in the post-*Executive Jet* cases, as none have involved claims arising from a transoceanic aviation accident. *E.g.*, Teachey v. United States, 363 F.Supp. 1197 (M.D.Fla.1973) (helicopter crash during a land shuttle) ; Higginbotham v. Mobil Oil Corp., 357 F.Supp. 1164 (W.D. La.1973) (helicopter crash during performance of activities identical to those performed by crew boats) ; Hawk v. Antilles Airboats, Inc., 355 F.Supp. 683 (D.C.Virgin Islands 1973) (crash of a seaplane).

6. "Indeed, it may be considered settled today that this specific federal statute gives the federal admiralty courts jurisdiction of such wrongful-death actions.

  *   *   *   *

"Of course, under the Death on the High Seas Act, a wrongful death action arising out of an airplane crash on the high seas beyond a marine league from the shore of a State may clearly be brought in a federal admiralty court." Executive Jet, *supra,* 409 U.S. at 263–264, 271, n. 20.

7. The Act itself reads :
"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Terri- tories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. Mar 30, 1920, c. 111, § 1, 41 Stat. 537." 46 U.S.C. § 761.

While a distance of 1900 feet from shore would almost certainly be within a foreign state's territorial waters, we have noted that some foreign states have extended their territorial waters for fishing purposes to much greater distances than "one marine league." (Approximately 3 nautical miles.) Because Congress only has power to fix the extent of territorial waters measured from the shores of its own country it may well have considered all waters beyond one marine league from those shores to be "high seas" for purposes of DOHSA so long as navigable, even though within the territorial waters of a foreign state.

Relatedly, a law review article discussing the Act observes :
"In addition, it is not clear whether the DHSA would have application when the

However, we find it unnecessary to resolve this question since our acceptance of appellees' maritime tort designation on either this or *Executive Jet* ground would require recognition of another jurisdictional obstacle prohibiting this suit.

It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States under admiralty law or otherwise. Recognizing this fact, the appellees rely upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., as an expression of governmental consent to be sued.[8] The United States, however, contends that maritime claims against the Government arising under either the Death on the High Seas Act or the general maritime law are cognizable solely under two specific federal admiralty statutes, the Suits in Admiralty Act (SIA), 46 U.S.C. §§ 741–752 and the Public Vessels Act, 46 U.S.C. §§ 781–790. Neither side disputes the fact that jurisdiction under the FTCA and the two admiralty statutes is mutually exclusive, 28 U.S.C. § 2680(d).

The District Court, believing that the admiralty statutes extended only to claims involving United States vessels or cargo concluded that the appellees' maritime claim was maintainable solely under the FTCA. Prior to 1960, this interpretation of the intersecting scope of the statutes would have been correct.[9] However, in 1960, Congress amended section 742 of the SIA by deleting the language which restricted the statute to claims involving merchant vessels [10] and by substituting a broad new jurisdictional statement:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, *or if a private person or property were involved*, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States. . . ." Pub.L. No. 86–770, § 3, 74 Stat. 912. (Emphasis added)

The addition of the phrase "or if a private person . . . were involved" has been interpreted by a majority of courts as a legislative attempt to bring all maritime torts asserted against the United States within the purview of the SIA. *See De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971); *Richmond Marine Panama, S. A. v. United States*, 350 F.Supp. 1210, 1219–1220 (S.D.N.Y.1972); *Tankrederiet Gefion A/S v. United States*, 241 F. Supp. 83 (E.D.Mich.1964); *Contra, J.*

accident occurs on territorial waters of a foreign country. Nevertheless, the scope of general admiralty jurisdiction clearly extends to such cases, and presumably the scope of the DHSA would be the same except in the areas where it is expressly not applicable." 51 Cal.L.Rev. 389, 397 (1963).

For a discussion of the meaning of the term "high seas" *see* United States v. Flores, 289 U.S. 137, 153 S.Ct. 580, 77 L.Ed. 1086 (1933) and United States v. Rodgers, 150 U.S. 249, 14 S.Ct. 109, 37 L.Ed. 1071 (1893). *But see* United States v. Ross, 439 F.2d 1355, 1357 (9th Cir. 1971).

8. The appellees appear to argue that the Death on the High Seas Act constitutes an independent jurisdictional base. See Appellees' Brief at 2. However, this is clearly not the case. The DOHSA merely creates a cause of action for wrongful maritime death where none previously existed; the act does not contain any provision waiving sovereign immunity. A suit against the United States brought under the DOHSA still requires the pleading of a separate federal statute authorizing suit against the government. *See e. g.*, Allen v. United States, 338 F.2d 160 (9th Cir. 1964); 51 Cal.L.Rev. 389 (1963).

9. *See e. g.*, Somerset Seafood Co. v. United States, 193 F.2d 631 (4th Cir. 1951), and the discussion in De Bardeleben Marine Corp. v. United States, 451 F.2d 140 (5th Cir. 1971).

10. Prior to the 1960 amendment, section 742 read as originally enacted:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against any corporation . . . as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation. . . ."

W. Petersen Coal & Oil Co. v. United States, 323 F.Supp. 1198 (N.D.Ill.1970). Moreover, this expanded interpretation of the SIA appears to conform with retrospective Congressional understanding of the Act, as the court in Richmond Marine Panama, S. A. v. United States, *supra*, notes:

> "Although *subsequent* Congressional explanation of the meaning of a statute is not binding on the courts, it is interesting to note, nevertheless, that a Senate Report of August 17, 1972 explained that the 1960 amendment extends jurisdiction under the Suits in Admiralty Act 'to the full range of admiralty cases which might have been maintained had a private person or property been involved rather than the Government or its agents and employees or property.' Senate Report No. 92–1079, 92d Cong., 2d Sess., 1972, 9 U.S.Code Cong. and Admin. News, pp. 4045, 4050." *Id.* 350 F. Supp. at 1220, note.

■ We therefore conclude that the Suits in Admiralty Act, as amended, encompasses aviation wrongful death actions against the United States arising under the general maritime law or under the Death on the High Seas Act. *See* Allen v. United States, 338 F.2d 160 (9th Cir. 1964) (Text accompanying n. 2.) The necessary corollary is that the appellees action is therefore not maintainable under the FTCA. 28 U.S.C. § 2680(d).[11]

Finally, in anticipation of an adverse resolution of these issues, the appellees request a second opportunity to amend their complaint in conformity with the court's jurisdictional conclusions. Appellees further contend that such an amendment should "relate back" so as to avoid the time bar of the two year limitations period contained in the Suits in Admiralty Act, 46 U.S.C. § 745. In support of this request the appellees cite Beeler v. United States, 338 F.2d 687 (3d Cir. 1962), and other cases erroneously brought under the FTCA in which a transfer to admiralty was allowed.

■ However, the appellees' situation is distinguishable from the precedent they cite in that the appellees' *original complaint* was not filed until *after* the two year SIA limitations period had already expired. Since any amendment filed now can only refer back to the date when the appellees' original complaint was filed, Fed.R.Civ. P. 15(c), the "relation back" argument cannot save this action from the operation of section 745.[12] While the result is harsh, it is well established that the limitations period in the Suits in Admiralty Act is jurisdictional in nature:

> "The two year time-bar of the Suits in Admiralty Act is unlike a time-bar period prescribed under an ordinary Statute of Limitations. Under an ordinary time-bar statute a claim is not extinguished after the statutory period has elapsed. It is only unenforceable. The time-bar of the Suits in Admiralty Act renders a claim against the United States not only unenforceable, but extinguishes the claim itself, for when the sovereign, immune from suit, consented to be sued it was made a condition of the right to sue that suits so authorized had to be brought within the time-bar period."

States Marine Corp. of Delaware v. United States, 283 F.2d 776, 778 (2d Cir. 1960). *See also* McMahon v. United

---

11. Although somewhat blurred in the pleadings, the appellees attempt to distinguish the events which produced the air crash from the subsequent rescue operations. While the appellees' claim arising out of the latter activity is more readily classified as "maritime" in nature, it still requires the pleading of an appropriate jurisdictional statute authorizing suit against the government. Since we conclude that the SIA is the only statute proper in this instance, we hold that the appellees' action based either upon the crash or upon the rescue operations is not maintainable under the FTCA.

12. Under the Suits in Admiralty Act the two year statute of limitations begins to run from the date of injury rather than the date of denial of an administrative claim. McMahon v. United States, 342 U.S. 25 (1951); Kindrew v. United States, 479 F.2d 49 (5th Cir. 1973).

States, 342 U.S. 25 (1951). Neither infancy nor any other disability can toll the running of this statute. Sgambati v. United States, 172 F.2d 297 (2d Cir. 1949), cert. denied, 337 U.S. 938, 69 S. Ct. 1514, 93 L.Ed. 1743 (1949). *Accord,* Williams v. United States, 133 F.Supp. 319 (E.D.Va.1954), aff'd, 228 F.2d 129 (4th Cir. 1955), cert. denied, 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499 (1956).[13]

We therefore conclude that to the extent that the appellees' claim is cognizable in admiralty, it is governed by the Suits in Admiralty Act and absolutely time-barred by § 745 of that Act. The Government's motion to dismiss should have been granted.

Reversed.

---

13. In similar vein this court has held that the institution of a suit under the FTCA within the statutory period of limitation is a jurisdictional requirement, and that the limitation period is not tolled during minority. Mann v. United States, 399 F.2d 672 (9th Cir. 1968); Brown v. United States, 353 F. 2d 578 (9th Cir. 1965). Indeed, appellees do not contest the point here.