**T. J. FALGOUT BOATS, INC. and Insurance Company of North America, Appellants,**

v.

**UNITED STATES of America, the Department of the Navy, Appellee.**

No. 73–1755.

United States Court of Appeals, Ninth Circuit.

Dec. 27, 1974.

F. T. Muegenburg, Jr., Ventura, Cal. (argued), of Heily, Blase, Ellison & Muegenburg, Oxnard, Cal., for appellants.

Paul Gary Sterling (argued), Admiralty & Shipping Section, Dept. of Justice, San Francisco, Cal., for appellee.

Before KILKENNY and TRASK, Circuit Judges, and RICH, Judge.*

OPINION

KILKENNY, Circuit Judge:

This case was heard in the district court and is now before us on an agreed statement of facts, the germane portion of which reads:

* The Honorable Giles S. Rich, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

\* \* \* \* \* \*

"On August 12, 1968, a ship, the PACIFIC SEAL, a 299 gross tons ship owned by Falgout Boats, Inc., operating in navigable waters off the coast of California, was struck by a Sidewinder missile, which was released from a U. S. Navy airplane. The circumstances [sic] of the incident are not fully known since the airplane crashed on this mission and the pilot was killed. The United States will offer no evidence to contest Plaintiffs' allegations of negligence, set forth in Paragraph III of the Complaint. The final accepted joint survey made and signed by the U.S. Salvage Association surveyor, R. S. Ritchie, representing the United States Navy and Sidney G. Barnett, surveyor for the Insurance Company of North America and Falgout Boats, Inc., accepted repair damages in the total sum of $7,743.59 as due to the damage caused by the missile. This amount, however, was exclusive of miscellaneous damage items, later accepted by the Navy surveyor as $770.00. The total damages attributable to this incident are therefore agreed to be $8,513.59." [1]

\* \* \* \* \* \*

Paragraph III of the complaint, mentioned in the agreed statement of facts, charges that the Navy pilot who released the Sidewinder missile conducted the flight with the express permission and consent of the appellee, negligently operated the aircraft, and negligently fired the missile which struck appellant Falgout's ship.

The lower court held that: (1) appellants' exclusive remedy against the appellee is under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and (2) since more than two years elapsed from the date of the casualty to the filing of the complaint, appellants' claim is barred by the Act's two-year statute of limitations, 46 U.S.C. § 745. We affirm.

## ISSUES

On appeal, appellants challenge both of the district court's conclusions. They contend that their action lies under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), rather than under the Suits in Admiralty Act.

## REMEDY

The Supreme Court has uniformly held that a maritime action may be maintained against the United States only under the Suits in Admiralty Act. Brady v. Roosevelt S.S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943). Subsequent amendments to the Act, as amended September 13, 1960, 74 Stat. 912, have not altered the rule. United Continental Tuna Corp. v. United States, 499 F.2d 774 (CA9 1974).

Prior to the Supreme Court's decision in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), maritime jurisdiction was governed by the "locality rule" as recognized and defined in The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865), a rule which applied admiralty jurisdiction whenever a maritime locality was involved. *Executive Jet,* upon which appellants rely, involved the crash of a commercial jetliner in Lake Erie while engaged in a flight wholly within the continental United States. There, the court annexed to the "locality rule" a requirement that the facts of the occurrence show "a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 505. It held that admiralty jurisdiction was lacking despite the fact that the accident occurred in navigable waters. In so holding, it concluded that the mere fact the alleged wrong occurred or was located on or over navigable waters, was not in itself sufficient to turn a commonplace airplane negligence case into a "maritime tort." The Court observed that it was far more consistent with the history and purpose of admiralty to require, in addi-

---

1. Certain correspondence between appellants and appellee is attached to the statement.

tion to a maritime locality, that the occurrence bear a significant relationship to traditional maritime activity. The Court made it clear that it was not deciding whether an aviation tort could ever qualify for admiralty jurisdiction. *Id.* at 271, 93 S.Ct. 493.

Our problem is to decide whether the circumstances under which appellants' damages occurred bear a significant relationship to traditional maritime activity.

In analyzing *Executive Jet,* the Fifth Circuit in Kelly v. Smith, 485 F.2d 520, 525 (CA5 1973), cert. denied 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), suggested that in determining whether the wrong bears a significant relationship to traditional maritime activity, the court should look to the following factors: " . . . the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." *Accord*: St. Hilaire Moye v. Henderson, 496 F.2d 973, 978 (CA8 1974). We adopt these factors as persuasive on our facts.

Unlike the aircraft in *Executive Jet,* the subject aircraft is by its very nature maritime. Without question, the release of the Sidewinder from the naval aircraft over navigable waters created a potential hazard to navigation, and the activities of the aircraft at the time were maritime in nature. The United States Navy exists, in major part, for the purpose of operating vessels and aircraft in, on, and over navigable waters. Its aviation branch is fully integrated with the naval service and, whether land-based or sea-based, functions essentially to serve in sea operations. 10 U.S.C. § 5012.[2] Surely, it cannot be said that the naval plane's activity over water in the instant case was entirely "fortuitous" as was the plane involved in *Executive Jet.* We seriously doubt if appellants would question the applicability of the Suits in Admiralty Act if the aircraft had been stationed on an aircraft carrier. The record is silent on this point. It is our studied conclusion that *Executive Jet* is clearly distinguishable and does not control on the facts before us.

█ Closely in point is Roberts v. United States, 498 F.2d 520 (CA9 1974), cert. denied 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). There, the claims grew out of the crash of a private cargo plane into navigable waters as it was approaching an airbase in Okinawa. The aircraft was engaged in transporting cargo between Los Angeles and Viet Nam, with Okinawa being merely one of a number of intermediate stopping points. We noted there that transoceanic transportation of cargo is recognized as a traditional maritime activity. We further noted that prior to the advent of aviation, such shipping could be performed only by waterborne vessels, just as here, before the birth of aviation, the firing at sea of explosive projectiles was performed only by waterborne vessels. After an exceptionally able discussion of the problem by the author and an exhaustive analysis of the pertinent authorities, statutes and amendments, it was held that the occurrence was intrin-

2. " § 5012.   *United States Navy: composition; functions*

(a) The Navy, within the Department of the Navy, includes, in general, naval combat and service forces and such aviation as may be organic therein. *The Navy shall be organized, trained, and equipped primarily for prompt and sustained combat incident to operations at sea.* It is responsible for the preparation of naval forces necessary for the effective prosecution of war except as otherwise assigned and is generally responsible for naval reconnaissance, antisubmarine warfare, and *protection of shipping.* [Emphasis supplied.]

(b) All naval aviation shall be integrated with the naval service as part thereof within the Department of the Navy. *Naval aviation consists of combat and service and training forces, and includes land-based naval aviation, air transport essential for naval operations, all air weapons and air techniques involved in the operations and activities of the Navy,* and the entire remainder of the aeronautical organization of the Navy, together with the personnel necessary therefor." [Emphasis supplied.]

\*     \*     \*     \*     \*     \*

sically maritime in nature, was governed by the Suits in Admiralty Act, and, consequently, that an action could not be maintained under either the Federal Tort Claims Act or the Death on the High Seas Act, 46 U.S.C. §§ 761–768. An application of the logic employed in *Roberts* to the facts before us compels the conclusion that the activity of the Navy jet bore a significant relationship to traditional maritime activity and that exclusive jurisdiction of the claim rests within the perimeter of the Suits in Admiralty Act. The provisions of 10 U.S.C. § 5012, when read with *Roberts,* permits us to reach no other conclusion.

Another Ninth Circuit case in general support of our conclusion is Oppen v. Aetna Ins. Co., 485 F.2d 252 (CA9 1973), which involved the Santa Barbara Channel oil spill. There, the plaintiffs sought damages for injury to their maritime vessels and for interference with their navigation rights. We had no difficulty in distinguishing *Executive Jet* and in finding that the claims bore a significant relationship to the traditional maritime activity.

Also pertinent is United Continental Tuna Corp. v. United States, *supra,* a case involving a fishing vessel which was sunk by a United States Navy destroyer in Philippine waters. It was there held that an action could not be prosecuted under the Federal Tort Claims Act, where such an action was maintainable under the Suits in Admiralty Act. The 1960 Amendment was held not to change the exclusivity of the remedy.

Other authorities cited by the parties have received our attention. We do not discuss them because to do so would only add to the length of this opinion, without benefit to either bench or bar.

### STATUTE OF LIMITATIONS

█ United Continental Tuna Corp. v. United States, *supra,* and Roberts v. United States, *supra,* are dispositive of this issue. Because appellants' cause of action must be prosecuted under the Suits in Admiralty Act, and because the action was not commenced within the two-year period provided for in 46 U.S.C. § 745, the action cannot be maintained. The provisions of the section are jurisdictional and cannot be tolled. Roberts v. United States, *supra,* 498 F.2d at 527.

### CONCLUSION

Consequently, on the facts of this case, no action can be maintained under the Federal Tort Claims Act and action under the Suits in Admiralty Act is barred by the two-year statute of limitations.

The judgment of the district court is affirmed.