**Jack C. GRAY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79-27-CIV-4.**

United States District Court,
E. D. North Carolina,
New Bern Division.

Jan. 26, 1981.

---

Carl L. Tilghman, Beaufort, N. C., for plaintiff.

James L. Blackburn, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION and ORDER

DUPREE, Chief Judge.

In a complaint filed February 23, 1979, Jack C. Gray, plaintiff, invoking the jurisdiction of this court under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, alleged that at approximately 8:30 a. m. on 20 October 1977

"a person or persons unknown to the Plaintiff, while operating a military jet aircraft of the United States Department of Defense, negligently discharged or caused to be discharged military ordinance of a type unknown to Plaintiff which struck Plaintiff's fishing vessel, 'Tim', causing it to explode and sink at the East side of West Bay, near Cedar Island, North Carolina."

The complaint further alleged that plaintiff was aboard his vessel at the time of this occurrence; that as a result of the explosion he received first and second-degree burns on his body; and that his fishing vessel with all equipment was destroyed. Damages in the total sum of $40,000 were sought for these injuries and damages.

Following the filing of a motion to dismiss by defendant based on jurisdictional grounds the plaintiff was allowed to file an amended complaint basing jurisdiction on the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, see *T. J. Falgout Boats, Inc. v. United States*, 508 F.2d 855 (9th Cir. 1974), and Senior Judge Larkins of this court thereafter denied defendant's motion to dismiss as "moot." Both parties now agree that jurisdiction is properly laid under the Suits in Admiralty Act.

The defendant filed a simple denial of all of plaintiff's allegations relating to the alleged attack on plaintiff's fishing boat by defendant's military aircraft thus placing on the plaintiff the burden of proving his allegations by a preponderance of the evidence. The case was tried to the court without a jury at New Bern on January 6–7, 1981, and in this memorandum of decision the court will record its findings of fact and conclusions of law in conformity with Rule 52(a), F.R.Civ.P.

The plaintiff, Jack C. Gray, testified on his own behalf as the only eyewitness to the occurrence alleged in his pleadings. In substance he testified that he lived in Atlantic, North Carolina; that he had been a fisherman all his life; that he owned the 32-foot, diesel-powered vessel, the "Tim," on October 20, 1977, and that on that morning he boarded his boat with an 18-foot skiff in tow and proceeded alone northward through West Thorofare Bay into the West Bay area of Pamlico Sound where he intended to fish that day. He had anchored his boat near the eastern shore of West Bay and was in the pilot house making his final preparations to begin fishing when suddenly he heard "three slaps" which were followed almost immediately by an explosion which blew him through the back wall of the pilot house inflicting burns on plaintiff's face, arms and neck. As he looked up plaintiff says he "saw a plane pulling up and it went on up Pamlico Sound." He had been blown about ten feet backwards

through the pilot house, and at this time his boat was on fire. Plaintiff managed to get into his skiff and go to another fishing boat, the "Johnny Boy", which was anchored about a quarter of a mile away, leaving the "Tim" to burn and sink in water approximately thirteen to seventeen feet in depth.

The point where this incident occurred is approximately two miles to the east of a bombing range maintained by the government and used in training exercises by aircraft from bases located at Seymour Johnson Field in North Carolina and Myrtle Beach in South Carolina. Although the range is used almost on a daily basis by aircraft from these bases, the records at the two bases show that no aircraft from these bases were in the area at the time of the incident, and no aircraft other than the one described by the plaintiff was seen in the area at or about the time in question.

John W. Bond, Jr., skipper of the "Johnny Boy," testified that he recalled the incident and that he neither saw nor heard any planes at or about the time of the incident. He said that when the plaintiff reached his boat that he was "very shaken and stated that someone had 'dropped a bullet' on him." The other person on the "Johnny Boy" at the time, David Bell, Jr., did not testify at the trial; but a written statement by him taken in connection with the government's investigation and introduced at the trial as Government's Exhibit 6 states that Bell did not see or hear any planes nor hear any explosion or shots being fired prior to the plaintiff's arrival at the "Johnny Boy."

Shortly after boarding the "Johnny Boy" the plaintiff was picked up by some other fishermen and carried back to the area from which he had departed that morning and from there he went to the hospital where he was treated as an outpatient for his burns. Although it would seem that they would have been in the area and would have been in position to give some testimony concerning this matter, plaintiff professes not to know the names of the persons who carried him to shore, and the only other possible eyewitness produced at the

trial was the witness Bond who, as related above, heard and saw nothing that would substantiate plaintiff's account of the incident.

A medical report offered by plaintiff as his Exhibit 3 contains a statement made by the plaintiff to the attending physician at the time of his arrival at the hospital which is in part at variance with the version of the incident as given by the plaintiff in his testimony. This statement reads:

"Pt. states he was in West Bay back of Cedar Island, when Jet Airplane started shooting at him, large boat was anchored [with] skiff in tow. As he was getting in skiff large boat blew up."

Although boats of the type destroyed by explosion in this case are frequently heated by propane gas heaters, plaintiff denies that there was any heating fuel or equipment of any kind on his boat. He does admit that there was a can of ether in the pilot house which was used for priming the boat's diesel engine, and he also admits that he smokes, but he denies that the ether can was uncapped at the time or that he was smoking.

In its proposed findings of fact the government has indicated its agreement that plaintiff's vessel with its fishing gear had a value of $30,000 at the time of the loss and that plaintiff was damaged in the amount of $10,000 as a result of the burns on his face, hands and arms.

In addition to the negative-type evidence offered by the government showing that none of its aircraft were in the area at the time of this incident, testimony elicited from the government's investigating officer, Colonel John D. Ward, tended to show that the rapidity with which strafing ordinance is fired from aircraft is such that it would have been impossible for the plaintiff to have heard three separate impacts of missles against his boat; that if there had been a strafing attack on the boat, literally hundreds of shells would have struck the water sending up small geysers which would have been readily visible to the plaintiff; and that in any event the type of ammunition used on military training mis-

sions would not have caused an explosion of the kind described by the plaintiff in his testimony.

And, of course, to assume that a military pilot would make a single strafing pass over an innocent fishing vessel lying still in the water several miles outside the bombing range and then disappear without ever having been seen or heard by anyone except the one person on the fishing boat would be to unduly tax the court's credulity.

The result is that the court is unable to find by a preponderance of the evidence that plaintiff's losses and damages, although concededly grievous, were caused by an aircraft for which the defendant United States was responsible. It follows that judgment must therefore be entered for the government, and it is

So ordered.