**Dorothy SMITH, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 88–1865.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 17, 1989.*

Decided April 21, 1989.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Scott R. Bickford, Martzell, Thomas & Bickford, New Orleans, La., for plaintiff-appellant.

Gregory C. Sisk, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SNEED and NOONAN, Circuit Judges, and WILSON,** District Judge.

SNEED, Circuit Judge:

Dorothy Smith appeals the dismissal of two suits against the United States for lack of subject matter jurisdiction. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

On October 4, 1984, Harvey L. Smith died of mesothelioma. His widow, Dorothy Smith, believes that Mr. Smith was exposed to asbestos when he served as a United States merchant seaman from 1966 to 1972, and that this exposure caused his illness and death. On August 1, 1986, almost two years after Mr. Smith's death, Mrs. Smith sent a "Seaman's Claim" for damages to the Maritime Administration, Office of Chief Counsel, Department of Transportation, along with a letter instructing the Chief Counsel to "take the steps necessary to have [the] matter filed with the Maritime Administration."

On August 11, 1986, an attorney in the Division of Litigation, Maritime Administration, Department of Transportation, as a courtesy, forwarded Mrs. Smith's claim to the Office of Marine Insurance, Division of Insurance, Maritime Administration, Department of Transportation. On October 1, 1986, before the Office of Marine Insurance had allowed or disallowed her claim, Mrs. Smith sued the United States in the United States district court. For reasons discussed more fully below, Mrs. Smith filed a second action against the United States in the district court on October 16, 1986.

Over fourteen months later, on December 31, 1987, the district court ruled that the Suits in Admiralty Act (SIAA), 46 U.S. C.App. §§ 741–752 (Supp. IV 1986), and the Clarification Act, 50 U.S.C.App. § 1291 (Supp. IV 1986), required it to dismiss both of Mrs. Smith's actions for lack of subject matter jurisdiction. The district court found Mrs. Smith's first action defective because she had failed to obtain an administrative disallowance before bringing it and her second action fared no better because she brought it after the period of limitation had run. Mrs. Smith timely appealed to this court.

## II.

### JURISDICTION

This court has jurisdiction under 28 U.S. C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

■ This court reviews de novo the dismissal of an action for lack of subject matter jurisdiction. *See Abrams v. Commissioner*, 814 F.2d 1356, 1357 (9th Cir.1987) (per curiam).

## IV.

### THE SUITS IN ADMIRALTY ACT AND THE CLARIFICATION ACT

■ Mrs. Smith confronts two legislative hurdles that to her no doubt create a classic Catch 22 situation. Congress, on the one hand, has provided plaintiffs with maritime claims a limited opportunity to recover damages from the United States by waiving the nation's sovereign immunity in the SIAA and the Clarification Act. Congress, on the other hand, has restricted this opportunity in two ways. First, under the

** Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

SIAA, it has required plaintiffs to bring their actions within two years. *See* 46 U.S. C.App. § 745 (Supp. IV 1986). Second, under the Clarification Act, it has required certain plaintiffs, such as those claiming on behalf of merchant seamen, to pursue administrative remedies before suing in court. *See* 50 U.S.C.App. § 1291(a) (Supp. IV 1986). Although the duration of the administrative proceedings required by the Clarification Act may vary, a federal regulation deems a claim disallowed if the Administration takes no action on it within sixty days. *See* 46 C.F.R. pt. 327 § 7 (1987).

These restrictions plainly require us to dismiss both of Mrs. Smith's actions. Mr. Smith died on October 4, 1984, and the attorney in the Division of Litigation filed Mrs. Smith's claim on August 11, 1986. Mrs. Smith's first action brought on October 1, 1986, was premature because the government had not yet disallowed her claim nor had sixty days passed from the date of its filing.[1] Mrs. Smith's second action brought on October 16, 1986, was too late because two years had elapsed since Mr. Smith's death. Fundamentally, Mrs. Smith's difficulty arose because her "Seaman's Claim" was filed in an improper fashion. In this appeal, however, Mrs. Smith offers two theories to explain why we should not apply the Clarification Act and the SIAA in this manner.

## V.

### THE PROTECTIVE LAWSUIT THEORY

█ Mrs. Smith first insists that 46 U.S. C.App. § 745 did not deprive the district court of subject matter jurisdiction because her first action, although improperly filed before an administrative disallowance, "protected" her claim.[2] That is, her suit was neither premature nor too late. This first action, she reasons, put the United States on notice of her intention to sue within two years of Mr. Smith's death. *See United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (stating that statutes of limitation serve to encourage prompt presentations of claims). That is all that is necessary, she argues. She points out that the Second Circuit in *States Marine Corp. v. United States*, 283 F.2d 776, 779 (2d Cir.1960), specifically instructed plaintiffs to file "protective" suits to prevent § 745 from running while they pursue administrative remedies.

This case is inapposite. The procedure there involved cannot apply in this case. In *States Marine*, agents of the government damaged the libelant's ship. The libelant was not required to file an administrative claim under the Clarification Act. Nevertheless, the libelant did not sue the government immediately. Instead, pursuant to an arbitration provision in its contract, the libelant sought relief from the government's Contracting Officer and the Armed Services Board of Contract Appeals. When the government refused to pay the arbitration award, the libelant brought an action in federal court. *See id.* at 777.

By this time, over two years had passed since the libelant's claim arose and the court ruled that § 745 barred the libelant's action. The court, reflecting little sympathy for the libelant's loss, stated:

[The libelant] could have protected itself by instituting a "protective libel." ... If that had been done, not only would the libelant have preserved its cause of action, but the Government would have known a suit was pending and that if adjustment was not had under the [arbitration provision] that suit would be brought forward.

*Id.* at 779 (citation omitted).

Mrs. Smith confronts a very different set of procedural requirements. While the li-

1. The district court correctly rejected the contention that Mrs. Smith filed her administrative claim on August 1, 1986, when she sent it to the Office of General Counsel. *See* 46 C.F.R. pt. 327 § 5 (1987) (requiring plaintiffs to file their claims with the Division of Insurance).

2. The government argues that Mrs. Smith cannot contend that she filed the first complaint as a protective measure because she never raised the argument in the district court. In the district court, Mrs. Smith said that she filed the second complaint as a protective measure against the possibility that the court would dismiss the first complaint. Although Mrs. Smith argues the reverse here, we believe that a fair resolution of the case requires us to consider the issue.

belant in *States Marine* had agreed to arbitrate, the Second Circuit apparently determined that the agreement did not prevent it from filing a suit to stop the application of § 745. In this case, by contrast, the Clarification Act unmistakably prohibits Mrs. Smith from filing a claim in federal court before obtaining an administrative disallowance. The Clarification Act, in this way, undoubtedly put Mrs. Smith in an unenviable position as she waited for an administrative decision on her improperly filed claim while her time ran out under the SIAA. Without rewriting these statutes, however, we cannot prevent the harsh result that followed.

## VI.

### THE EXTENSION THEORY

■ Mrs. Smith next argues that we should enlarge the period of limitation in § 745 by sixty days to allow for the adjudication of administrative claims under the Clarification Act. Noting that the Supreme Court has recognized the power of federal courts to toll a statute of limitation when "consonant with the legislative scheme," *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 558, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974), Mrs. Smith argues that the Clarification Act served to give seamen employed by the United States the same rights as seamen employed on private vessels. She then quotes *Kinman v. United States,* 139 F.Supp. 925 (N.D.Cal.1956), which stated:

> Since seamen employed by private concerns have two years in which to bring suit under the Suits in Admiralty Act, it is logical to assume that Congress intended to allow seamen employed by the United States a full two years in which to bring suit, exclusive of the time consumed by the required administrative determination.

*Id.* at 928. Mrs. Smith reinforces her "tolling" argument by asserting that Congress would not have intended to "penalize men for serving their country."

The precedents from the Supreme Court and the Ninth Circuit prevent us from accepting her argument. It is true that in *Thurston v. United States,* 179 F.2d 514, 516 (9th Cir.1950), this court once held that the Clarification Act's administrative disallowance requirement gave government seamen two years and sixty days to sue the United States. In *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), however, while discussing a slightly different issue, the Supreme Court stated that *Thurston* conflicted with the clear language of the SIAA. In *Roberts v. United States,* 498 F.2d 520 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974), and *T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975), this court followed *McMahon* and read the SIAA more strictly than it had in *Thurston.* In those two cases we characterized § 745 as "jurisdictional" because it curtailed the United States' decision to waive its sovereign immunity; we concluded that a federal court cannot extend § 745 for any reason. *See T.J. Falgout,* 508 F.2d at 858; *Roberts,* 498 F.2d at 526.

Mrs. Smith would distinguish *Roberts* and *T.J. Falgout* because the plaintiffs in those cases filed complaints beyond the SIAA's period of limitation *and* beyond the disposition of any administrative claim. The distinction is not relevant. As the government points out, even though *Roberts* and *T.J. Falgout* involved slightly different facts, they established the rule that covers this case. We cannot extend the limitation period in § 745.

Mrs. Smith also argues that a subsequent case, *Williams v. United States,* 711 F.2d 893, 899 (9th Cir.1983), shows that *Roberts* and *T.J. Falgout* are not absolute and that a court can toll the SIAA's period limitation in an appropriate case. The contention rests on a footnote in *Williams* in which we found it unnecessary to decide "whether equitable tolling [of § 745] is available in [a] proper factual setting." *Id.* at 899 n. 9. We agree with the government that this statement, at most, reflects a mistaken belief that *Roberts* and *T.J. Falgout* had not yet settled the question.

Mrs. Smith finally contends that the classification of § 745 as "jurisdictional" in *T.J. Falgout* and *Roberts* makes no difference after *American Pipe.* She notes that the court *McCormick v. United States,* 680 F.2d 345, 351 (5th Cir.1982), did not bar extensions absolutely and stated that "limitations provisions in statutes waiving sovereign immunity [such as the SIAA] are designed to serve the same purpose as ordinary statutes of limitation, the primary purpose being to encourage the prompt presentation of claims." We believe, however, that *McCormick* simply conflicts with Ninth Circuit law. *See* 680 F.2d at 350 (recognizing its conflict with *T.J. Falgout*).

On the other hand, the Second, Third, and Fourth Circuits seem to agree with our interpretation of § 745. *See Bovell v. United States Dep't of Defense,* 735 F.2d 755, 757 (3d Cir.1984) (plaintiff cannot extend § 745 by filing an administrative claim); *Szyka v. United States Secretary of Defense,* 525 F.2d 62, 65 (2d Cir.1975) (section 745 is not subject to waiver); *Williams v. United States,* 228 F.2d 129, 132 (4th Cir.1955) (insanity cannot extend § 745), *cert. denied,* 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499 (1956).

AFFIRMED.