**EMMA RANDALL, Plaintiff**

**v.**

**AMERICAN SAMOA GOVERNMENT, Dr. A. TROUP, and DOES I through X, Defendants**

High Court of American Samoa
Trial Division

CA No. 37-85

May 17, 1991

111

Before REES, Associate Justice, VAIVAO, Associate Judge, LOGOAI, Associate Judge.

Counsel: For Plaintiff, John L. Ward II
 For Defendant American Samoa Government,
 Richard D. Lerner, Assistant Attorney General

On Motion to Dismiss:

Defendant American Samoa Government (ASG) moves to dismiss this medical-malpractice action on the ground that the action was filed prior to exhaustion of the administrative remedy prescribed in A.S.C.A. § 43.1204. This section of the Government Tort Liability Act provides that no action may be instituted upon a tort claim against ASG unless the claimant has first presented the claim in writing to the Attorney General, and the claim has been finally denied by the Attorney General. Because the complaint was filed on March 11, 1985, and the Attorney General cannot be deemed to have denied the administrative claim until June 6, 1985, ASG maintains that the Court lacks subject-matter jurisdiction over the action.

Defendant ASG further contends that the two-year statute of limitations expired on May 8, 1985, and that it is therefore impossible

for plaintiff to cure the jurisdictional defect by amendment of her complaint to allege the intervening denial of her administrative claim.

The material facts are as follows:

1) Assuming the facts in the complaint to be true, the medical malpractice that caused plaintiff's injuries occurred between March 28, 1983, and May 8, 1983, and plaintiff would appear to have learned the extent and probable causes of her injuries shortly thereafter.

2) On March 6, 1985, counsel for plaintiff filed an administrative claim with the Attorney General.

3) On March 11, 1985, counsel for plaintiff filed the complaint in the present action.

4) The complaint was not immediately served upon defendant ASG or upon the other named defendant, Dr. Troup.

5) On March 20, 1985, counsel for plaintiff submitted to the Court a draft order for service by publication upon Dr. Troup, alleging that he could not be found within the Territory. The then-Chief Justice responded with a one-line note to counsel to the effect that the statutory requirements for service by publication had not been met. The apparent reference was to the failure of the accompanying affidavit to state a particular ground on which the absent defendant was alleged to be amenable to extraterritorial service.

6) The Attorney General appears never to have responded in writing to the administrative claim that had been filed on March 6. According to the provision of A.S.C.A. § 43.1205 (as amended by a law that became effective May 29, 1985, while plaintiff's administrative claim was pending) plaintiff was entitled to consider her administrative claim denied on June 6, 1985.

7) A copy of the complaint in the present action and a summons were served on defendant ASG on or about November 26, 1985.

8) On December 12, 1985, defendant ASG filed an answer on behalf of itself and Dr. Troup. The answer did not plead either the non-exhaustion of the administrative remedy (A.S.C.A. § 43.1205) or the two-year statute of limitations (A.S.C.A. § 43.1204) as a defense.

114

Indeed, the answer affirmatively admitted plaintiff's allegation that "[t]his court has jurisdiction herein."

9) The answer also admitted that Dr. Troup was acting at all relevant times in the course and scope of his duty as a surgeon employed by ASG.

10) Nothing further appears to have happened until June of 1988, when plaintiff moved for a trial date. Between 1988 and late 1990, several trial dates were set and continued by stipulation of the parties, and defendant ASG made several discovery requests, with all of which plaintiff appears to have complied.

11) On September 19, 1988, defendant ASG filed a counterclaim for various medical bills, some for services alleged to have been rendered to plaintiff and others for services "to a patient which she sponsored for immigration purposes." In the same pleading, counsel for ASG filed a third-party claim on behalf of the local power authority (an entity wholly owned by ASG) against plaintiff for unpaid electric bills.

12) On May 22, 1989, counsel for ASG and the power authority secured an entry of plaintiff's default on the counterclaim and third-party complaint. Plaintiff then moved to set aside the entry of default. The motion was granted with reference to the medical bills but denied with reference to the electric bills.

13) On October 9, 1990, the defendant brought the present Motion to Dismiss. The motion was heard on October 26. The court took the motion under advisement and granted a further continuance of the trial, pending a decision on the motion.

In addition to its memorandum in support of the motion to dismiss, defendant ASG has appended copies of this Court's two opinions in *Mataipule v. Tifaimoana Partnership, Ltd.*, 14 A.S.R.2d 100 (1990); 16 A.S.R.2d 48 (1990), on motions presenting issues nearly identical to those raised by the present motion. ASG has also appended the lengthy and scholarly memoranda it had submitted to the Court in *Mataipule*. Although there are some distinctions between this case and that one, ASG's primary arguments herein are addressed to the errors it believes the Court committed in *Mataipule*.

Defendant ASG urges this Court to reject the holding and the reasoning of *Mataipule* (which was decided before a different panel of judges) on two questions.

First, the *Mataipule* Court held that a prospective plaintiff's "claim" under the Government Tort Liability Act does not accrue, and therefore that the two-year limitation period provided by A.S.C.A. § 43.1204 does not begin to run, until after the claim has been finally denied by the Attorney General in accordance with the procedure set forth in A.S.C.A. § 43.1205. The Court construed the term "claim" as synonymous with "cause of action." Because an injured person cannot sue until he has exhausted his administrative remedy --- a proposition with which ASG wholeheartedly agrees --- and because the plain language of A.S.C.A. § 43.1204 would appear to give such persons two years in which to sue, the Court reasoned that the two years must begin on the day exhaustion occurs. *Mataipule*, 14 A.S.R.2d at 102-05.

The *Mataipule* Court's decision on this point is well-reasoned and well-supported. Courts have frequently construed references to the accrual of a "claim" as being synonymous with the accrual of a "cause of action." *See Mataipule*, 16 A.S.R.2d at 51-55, and authorities cited therein. It is particularly interesting that this construction was given to the pre-1966 version of 28 U.S.C. § 2401(b), the statute on which A.S.C.A. § 43.1204 may have been modeled. *See id.* at 52, and authorities ci..d therein.

Nevertheless, if the question were properly before us we might well agree with defendant ASG that A.S.C.A. § 43.1204 should be construed consistent with the general rule that a tort claim accrues when a person has been injured and knows or should have known the essential facts about his injury and its probable cause. *See American Samoa Government v. Utu*, 9 A.S.R.2d 88, 91 (1988). As ASG points out, *Mataipule* could have the odd effect of giving injured persons an indefinite amount of time in which to sue, since the Government Tort Liability Act does not explicitly specify a time limit for bringing administrative claims. Even if, as the *Mataipule* Court suggests, a separate two-year limit for bringing the administrative claim could be imposed by analogy to the two-year limit on lawsuits, the effect would be to give people injured by government employees four-and-one-half years to sue, in curious contrast to the two years given those who have been injured by private persons. *See A.S.C.A. § 43.0120(2).

The alternative holding of *Mataipule*, which ASG also urges us to reject, is far less problematic. Rather than subtracting the three-month administrative review period provided in A.S.C.A. § 43.1205 from the two-year statute of limitations provided in A.S.C.A. § 43.1204, the Court decided to add it. On ASG's construction of the two statutes, a plaintiff who did not act on his claim for one year and nine months would be forever barred from bringing it. (The Attorney General could, however, choose out of the kindness of his heart to revive the claim by acting in less than the required three months.) Instead, the Court construed the two statutes together to require that an action be filed within two years from the date of injury but that this period is tolled during such time as the Attorney General has a timely filed administrative claim under consideration.

This construction would appear to be the least unsatisfactory of all the alternatives, in that it appears faithful to the language and apparent legislative purposes of both of the sections in question. Injured persons may bring suit within two years from the date of injury (or, in certain cases, of knowledge thereof), as clearly provided by the Fono in A.S.C.A. § 43.1204, rather than only one year and nine months, as urged by counsel for ASG. The right to sue is absolutely barred by failure to bring an administrative claim within the same two-year period, as provided by A.S.C.A. § 43.1205; and the Attorney General has a reasonable time in which to review such claim, as is also provided by that section.

Tolling is frequently deemed consistent with the purposes of statutes of limitation. This is particularly true when the period of tolling is one during which the plaintiff was unable to bring suit due to circumstances that were in the primary control of the defendant. ASG's principal argument against the tolling of the period prescribed in A.S.C.A. § 43.1204 is that this statute is "jurisdictional" and that jurisdictional statutes of limitation, unlike ordinary ones, cannot be tolled. We believe this argument to be circular. Courts tend to characterize a particular statute of limitation as jurisdictional or not *after* they have decided, for reasons given or assumed, that it ought or ought not to be regarded as tollable, waivable, and/or subject to equitable estoppel. To say that it ought not to be so regarded because it is jurisdictional assumes the whole ground in dispute.

We are not, however, directly presented with either of the questions decided by the Court in *Mataipule*. This is because in the present case --- unlike *Mataipule*, in which ASG pled both the statute of

117

limitations and the failure to exhaust administrative remedies in its answer --- several years have elapsed between the filing of the action and the bringing of the present motion to dismiss.

Thus, for instance, if we were to follow *Mataipule* and hold that the present plaintiff's tort claim accrued on June 6, 1985, the day her administrative claim was deemed denied, the two-year period in which she might have filed her suit would have run from that day until June 6, 1987. As ASG points out, she could therefore no longer cure the jurisdictional defect, if any. An amended complaint would relate back to the date she filed her original complaint, at which time the Court could not exercise jurisdiction because plaintiff had not yet exhausted her administrative remedies. A new lawsuit filed in 1991 would not present this problem, because plaintiff has now exhausted her administrative remedies. It would, however, be filed several years after the latest date at which the two-year statute of limitations might arguably have begun to run and would therefore be subject to dismissal.

Similarly, our tentative agreement with the *Mataipule* Court's opinion on the tolling of the statute is of no help to the present plaintiff. Such tolling would have begun on March 6, 1985, when she filed her administrative complaint. It would have ended on June 6, 1985, when her complaint was deemed denied by three months' inaction on the part of the Attorney General. The running of the statute --- which, assuming it began on the day the alleged malpractice ended, had only about two months to go when the tolling began in March 1985 --- would then resume, and on or about August 10, 1985, plaintiff lost her right to file a new lawsuit. At any time thereafter she would be presented with the same problem as in the previous illustration: an amended complaint would either "relate back" to a time when she had not exhausted her administrative remedies or, in the absence of "relation back," it would be dismissed because the statute of limitations had run.

In our opinion, during all the time from the filing of the complaint in the present action until the present day, there has been only about a two-month period (from June 6, 1985, to about August 10, 1985) when both of the following conditions held: (a) plaintiff could bring a lawsuit, having exhausted her administrative remedy, and (b) the statute of limitations had not yet run. Had plaintiff amended her complaint at any time during that brief period or had she dismissed this action and filed a new one, her suit would not have been subject to dismissal either as premature under § 43.1205 or as barred by § 43.1204. By November 1985, however, when her eight-month old complaint was finally served

on counsel for ASG, the action was subject to dismissal for either of these reasons, and possibly also for failure to effect service within a reasonable time. All ASG had to do was plead any of these defenses in its answer --- or, at its option, by bringing a motion to dismiss before filing an answer. *See* T.C.R.C.P. 12(b).

ASG, however, did not plead any such thing. Instead, it filed an answer which not only did not raise any of these issues but also affirmatively admitted that the Court had jurisdiction over the parties and the subject matter. It proceeded to litigate the merits of the action quite vigorously for several years. It required the defendant to undergo a deposition and to answer numerous interrogatories, requests for production of documents, and requests for admissions. It also sought and got affirmative relief from the Court, by filing what amounted to a mandatory counterclaim, a permissive counterclaim, and another permissive counterclaim on behalf of its wholly-owned power company, and has effectively reduced one of these claims to a substantial judgment. Under these circumstances we hold that ASG has waived the statute of limitations.

Again, defendant ASG urges that the statute of limitations is jurisdictional and therefore cannot be waived. The authority cited for this proposition is twofold. First, the High Court has held that the administrative remedy provided by A.S.C.A. § 43.1205 (not the statute of limitations provided by A.S.C.A. § 43.1204) is jurisdictional. *See, e.g., Gobrait v. Americana Hotels, Inc.*, 1 A.S.R.2d 1 (1978). Second, statutes prescribing the time period in which actions may be brought against the United States are frequently construed --- similarly to requirements for the exhaustion of administrative remedies, with which such time periods are often intertwined --- as jurisdictional prerequisites to suit, rather than as statutes of limitation properly so called. *See, e.g., Smith v. United States*, 873 F.2d 218 (9th Cir. 1989); *Ippolito-Lutz, Inc. v. Harris*, 473 F. Supp. 255 (S.D.N.Y. 1979).

We have been cited to no case, and know of none, holding that the two-year statute of limitations provided in A.S.C.A. § 43.1204 is anything other than an ordinary statute of limitations: that is, an affirmative defense which is waived if not affirmatively pled by the defendant. Unlike its quite differently phrased and structured counterpart in the Federal Tort Claims Act, the limitation of A.S.C.A. § 43.1204 has been held to be subject to tolling during the minority of an injured person. *Utu v. American Samoa Government, supra; Lutu v. American Samoa Government*, 7 A.S.R.2d 61 (1988). This strongly suggests that

119

A.S.C.A. § 43.1204 is a real statute of limitations, not a deceptively similar jurisdictional prerequisite. We so hold.

The usual reason given for construing statutes of limitation for suits against the United States as jurisdictional (i.e., not subject to waiver and/or tolling) is that the limitations in question are deemed an integral part of the initial waiver of sovereign immunity. *See Smith*, 873 F.2d at 221. The United States Supreme Court has observed that the limitation period "is a condition of [the] waiver" by which the government agreed to let itself be sued at all, and that "we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). The Court has also taken pains to point out, however, that it is equally incorrect for courts to "assume the authority to narrow the waiver that Congress intended." *Id.* at 118.

Whether the Fono, in prescribing a two-year limitation period for tort claims against the Government, created a traditional statute of limitations or something else altogether is a question of legislative intent. As often as not, such questions boil down to inquiries into what the legislature *would* have intended *if* it had adverted in advance to the problem at hand. In the absence of any evidence at all that the Fono meant the two-year limitation on tort actions against the Government to be construed and applied according to a different and almost opposite set of rules than the similar two-year limitation on tort actions against private persons, we cannot simply assume that it did. In particular, we cannot conclude that the Fono intended or would have intended what ASG concedes is the "harsh result" of depriving litigants against the Government of the benefit of the traditional and eminently sensible rule that a party entitled to plead the statute of limitations can waive the statute by not pleading it as an affirmative defense and by proceeding to litigate the suit on its merits.[1]

---

[1] Aside from the absence of any apparent legislative intent to enact a different set of rules for tort suits against the government than for similar suits against private parties, what structural and semantic evidence there is suggests that A.S.C.A. § 43.1204 should be read as an ordinary statute of limitations. The statute is referred to in its caption as a "statute of limitations." It contains no explicit reference to jurisdiction. Unlike some time limits that have been held to be jurisdictional, it is set forth in a separate section of the statute rather than in the same sentence or paragraph as an exhaustion of remedies provision or as the substance of

Finally, however, ASG argues that even if the statute of limitations is waiveable, it should not be deemed to have waived the statute in the present case because plaintiff was not "prejudiced" by ASG's failure to plead the statute in its answer. This lack of prejudice is said to be because at the time ASG filed its answer, the statute of limitations had already run. "Thus, even if ASG had raised the issue at its first opportunity, it was too late for plaintiff to cure the deficiency by filing a new complaint." This argument proves far too much. By definition, after a statute of limitations has run it is always too late for a plaintiff to cure the deficiency by filing a new complaint. If absence of prejudice were to be evaluated as of the day plaintiff failed to plead the statute as a defense and could be established merely by showing that on such date the plaintiff could not have cured the defect in his action by filing a new complaint, then there would never be any prejudice, and no defendant could ever successfully waive the defense by failing to plead it.

On the contrary, however, we believe prejudice to the plaintiff should be evaluated as of the time that the defendant finally does get around to asserting the statute. In the six years that have intervened since defendant's failure to plead the statute, plaintiff has been subjected to active litigation on the merits. The record reflects that she has been required not only to comply with voluminous and unusually intrusive discovery requests, but also to defend against three separate claims for affirmative relief asserted against her by ASG. She will almost certainly have judgment taken against her on at least one of these claims. The record also reflects that after 1985 plaintiff gave up her attempt to serve and sue the principal, alleged tortfeasor, the absent Dr. Troup, presumably because of ASG's admission in its answer that he had been acting in the course and scope of his duty. *See* A.S.C.A. § 1207. It is quite likely that none of these things would have happened had ASG

---

the cause of action it limits. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), in which the Supreme Court stated flatly that "a statute of limitations," unlike a "jurisdictional prerequisite to filing," is "subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 398. In *Zipes* the Court found references to a statute in its own text and legislative history as a "statute of limitations" or a "period of limitations," together with the absence of any explicit reference to jurisdiction in the text or legislative history, as dispositive indications that the statute was a true statute of limitations and not a non-waiveable jurisdictional prerequisite to the filing of suit. *Id.* at 392-98.

121

made a timely assertion of the statute of limitations. We find that the plaintiff would be unduly prejudiced if ASG were allowed to rescind its waiver of the statute at this late date.

Accordingly, the motion to dismiss is denied. Plaintiff will be given leave to file an amended complaint, asserting the exhaustion of her administrative remedy, at any time within twenty days from today. The amended complaint will be effective on the day it is filed. Defendant's waiver of the statute of limitations will be deemed to apply for so long as plaintiff continues her diligent prosecution of the action.

It is so ordered.