**James Q. TEACHEY, as personal representative of James Q. Teachey, Jr., Deceased, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 73-135-Civ-J-S.**

United States District Court, M. D. Florida, Jacksonville Division.

July 19, 1973.

Gary A. Bubb, Jacksonville, Fla., for plaintiffs.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Michael J. Pangia, Aviation Unit, U. S. Dept. of Justice, Washington, D. C., for defendant.

---

ORDER

CHARLES R. SCOTT, District Judge.

On July 17, 1973, this case came on for hearing on the defendant's motion to dismiss the complaint, filed herein June 14, 1973. For the reasons stated below, this Court feels that the motion is meritorious and that the complaint should be dismissed without prejudice and with leave to file an amended complaint.

The essential allegations set forth in the complaint are as follows: On or about December 16, 1972, defendant United States of America, through the United States Coast Guard, effected a rescue of James Q. Teachey, Jr., plaintiffs' decedent, from a sinking shrimp boat in the Gulf of Mexico. After recovering Teachey from the vessel by rescue helicopter, the aircraft landed at Key West, Florida, but, for reasons unknown to plaintiffs, the passengers did not disembark but instead remained in the aircraft while it departed enroute to St. Petersburg, Florida. The aircraft crashed just off the coast of St. Petersburg, killing all aboard.

Plaintiffs, the surviving parents of the decedent, brought this action under the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., alleging both negligence and breach of warranty of seaworthiness by the Coast Guard.

The gravamen of the defendant's motion is that federal admiralty jurisdiction is lacking over the aviation tort claim herein presented. The basis for such an assertion is the holding in Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that "in the absence of legislation to the contrary, there is no federal admiralty jurisdiction over aviation tort claims arising from flights by land-based aircraft between points within the continental United States". 409 U.S. at 274, 93 S.Ct. at 507.[1] Plaintiffs, on the contrary, contend that this case comes within the jurisdictional test enunciated in Executive Jet Aviation, supra, i. e., it bears a significant relationship to traditional maritime activity.[2] 409 U.S. at 268, 93 S.Ct. 493.

This Court holds, however, that this case flies squarely in the face of the language in Executive Jet outlining certain parameters of the "significant relationship" test. The pertinent language is as follows:

Neither the fact that a plane goes down on navigable waters nor the fact that the negligence 'occurs' while a plane is flying over such waters is enough

1. Under the Death on the High Seas Act, 46 U.S.C. § 761 et seq., a wrongful death action arising out of an airplane crash on the high seas *beyond a marine league* from the shore of a state may be brought in a federal admiralty court. Although the complaint did not allege that the crash occurred within a marine league of shore, this Court can only presume that such was the case because of plaintiffs' failure to plead what amounts to certain jurisdiction under the Death on the High Seas Act. *See* Executive Jet Aviation, Inc., 409 U.S. at 271, n. 20, 93 S.Ct. 493. However, the plaintiffs could proceed under this Act in their amended complaint.

2. The Supreme Court rejected the "maritime locality" test in favor of the significant relationship test. The precise language to this effect is as follows:

All of these and other difficulties that can arise in attempting to apply the locality test of admiralty jurisdiction to aeronautical torts are, of course, attributable to the inherent nature of aircraft. Unlike waterborne vessels, they are not restrained by one-dimensional geographic and physical boundaries. For this elementary reason, *we conclude that the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters—whatever that means in the aviation context—is not of itself sufficient to turn an airplane negligence case into a 'maritime tort'.* It is far more consistent with the history and purpose of admiralty to require also that the wrong bear *a significant relationship to traditional maritime activity. We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary.* 409 U.S. at 268, 93 S.Ct. at 504.

to create such relationship to traditional maritime activity as to justify the invocation of admiralty jurisdiction.

409 U.S. at 270–271, 93 S.Ct. at 505.

Plaintiffs, however, rely on some dicta in the opinion to the effect that when an aircraft is performing a function traditionally performed by waterborne vessels, it might bear a significant relationship to traditional maritime activity. 409 U.S. at 271, 93 S.Ct. 493. *See, e. g.,* Hornsby v. The Fishmeal Co., 431 F.2d 865 (5th Cir. 1970). The gist of plaintiffs' argument is that because Coast Guard helicopters' main occupation is engaging in air-sea rescue operations, they are performing a function traditionally performed by waterborne vessels. This argument fails, however, in that the complaint alleges specifically that the helicopter crashed, not in the performance of an air-sea rescue operation, but rather after the rescue had been effected, the helicopter had been refueled in Key West, and while it was transporting the decedent from Key West enroute to St. Petersburg. In the view of this Court, the mere transportation of the decedent by aircraft from one Coast Guard base to another does not constitute a sufficient act of performing a function traditionally performed by waterborne vessels so as to bring it within the dictum statement enunciated in *Executive Jet, supra.* The flight from Key West to St. Petersburg was merely a flight "by a land-based aircraft between points within the continental United States". 409 U.S. at 274, 93 S.Ct. at 507. The landing of the helicopter and its refueling at Key West delineated the termination of the aircraft's performance of a function traditionally performed by waterborne vessels (*i. e.,* the performance of search and rescue operations) and the commencement of an activity unrelated to the maritime sphere, the mere transportation of passengers by aircraft from one land base to another within the continental United States.

In the instant case the helicopter's flight was allegedly interrupted by circumstances having no relationship to the vagaries of sea travel. As pointed out in *Executive Jet, supra:*

> Although dangers of wind and wave faced by a plane that has crashed on navigable waters may be superficially similar to those encountered by a sinking ship, the plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the sea—be it pilot error, defective design or manufacture of airframe or engine, error of a traffic controller at an airport or whatever; and the determination of liability will thus be based on factual and conceptual inquiries unfamiliar to the law of gravity.

409 U.S. at 270, 93 S.Ct. at 505.

Therefore, the complaint must be dismissed. However, the plaintiffs are certainly not foreclosed from proceeding on the merits. They may proceed under the Death on the High Seas Act if the crash occurred more than one marine league from shore or in any event, under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., assuming the administrative conditions precedent thereto are complied with. 28 U.S.C. § 2675.

Therefore, it is

Ordered:

1. Defendant's motion to dismiss, filed herein June 14, 1973, is hereby granted without prejudice.

2. The complaint, filed herein February 14, 1973, is hereby dismissed without prejudice for lack of jurisdiction.

3. Plaintiffs are allowed 30 days from the date of this order within which to file an amended complaint.

4. Defendant is allowed 20 days thereafter within which to plead thereto as advised.

5. Plaintiffs' motion to strike, filed herein June 1, 1973, is hereby denied.