Silvia BRONS, Personal Representative of the Estate of Stanley Brons, Deceased, Plaintiff,

v.

BEECH AIRCRAFT CORPORATION, et al., Defendants.

No. 84–1776–Civ.

United States District Court, S.D. Florida.

Nov. 27, 1985.

Calvin F. David, Thornton, David & Murray, P.A., Miami, Fla., for Beech Aircraft.

Robert L. Park, Sam Brodnax, Smathers & Thompson, Miami, Fla., for Sylvia Brons & Stanley Brons, decedent.

Peter Wildman, McDonald & McDonald, Miami, Fla., for Airmanship, Inc.

Thomas J. Caldwell, Barkas & Caldwell, Miami, Fla., for Hertzog Aviation.

Howard Barwick, Barwick & Dillian, P.A., Miami Shores, Fla., James Blecke, Miami, Fla., for Executive Flight.

Richard R. McCormack, James S. Usich, Usich & Sullivan, Miami, Fla., for Lucille & John B. Tasso (John, decedent).

## ORDER GRANTING SUMMARY JUDGMENT

ATKINS, District Judge.

THIS CAUSE is before the Court on the issue of whether plaintiff may maintain an action under Florida's Wrongful Death Act. Defendant Beech Aircraft asserts that the action is controlled exclusively by the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* In addition, Defendant Hartzog has moved for summary judgment based on the affidavit of Virgil Smith and Donald Pond.

1. Defendant Hartzog's Motion:

Rule 56 provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56. In this case, defendant Hartzog has moved for summary judgment and has supported the motion with an affidavit by Virgil Smith and Donald Pond. No response has been filed. The motion, memorandum, and supporting materials indicate that Hartzog should not be a party in this action.

2. The Governing Law of This Claim:

■ The critical facts can be stated briefly. Plaintiff's decedent, Stanley Anton Brons, and John Tasso, decedent of Cross-Plaintiff Lucille L. Tasso, were killed in an airplane crash which occurred between 4.35 and 4.5 nautical miles from the Florida shoreline.[1] The aircraft crashed off the coast of Fort Myers during a flight which began and was to end in Florida.

Unlike the simple statement of facts, the relevant case law is complex and appears to be in conflict on certain points. Between the various parties, it has been argued that the Florida Wrongful Death Act is the exclusive remedy, that the Death on the High Seas Act ("DOHSA") provides the exclusive remedy, and that concurrent jurisdiction exists under the respective statutes. Because of the apparent confusion in the case law, the Court has carefully reviewed the major cases in rendering this opinion.

A. *Florida's Territorial Waters*

Plaintiff asserts that Florida law applies because the airplane accident occurred within Florida's territorial waters. While the accident occurred more than one marine league from the Florida shoreline, by adoption of its Constitution of 1868, Florida expanded its boundaries from one marine league to three marine leagues from the shoreline into the Gulf of Mexico. The present version of Florida's Constitution maintains this boundary. Therefore, plaintiff argues, Florida's territorial waters extend approximately nine nautical miles into the Gulf of Mexico.

Florida's territorial limits are significant because section 1 of DOHSA is limited by section 7 which provides:

The provisions of any state statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any water within the territorial limits of any state, or to any navigable waters in the Panama Canal Zone.

46 U.S.C. § 767. Thus, the language of the statute indicates that DOHSA should not interfere with substantive state law remedies.

Based on Florida's Constitution and the wording of section 7, plaintiff's argument seems plausible; however, courts have consistently rejected it. *See Chute v. United States,* 466 F.Supp. 61 (D.Mass.1978); *Hooker v. Raytheon Co.,* 212 F.Supp. 687 (S.D.Cal.1962). In *Hooker,* the parties stipulated that the vessel sank in the Santa Barbara channel more than one marine league from either the California shoreline or the closest channel island. Everyone on the ship died in the accident. The California Constitution and subsequent statutes placed "all of the ocean area of the Santa Barbara channel within the boundaries of the State of California." *Id.,* 212 F.Supp. at 688, 690. Nevertheless, the court concluded:

the deaths involved were on the high seas within the terms and provisions of the Death on the High Seas Act and that the waters of the Santa Barbara channel, between a belt one marine league in width from the shore of the mainland and a belt of the same width around each island, are not territorial waters of the State of California within the purview of said Act. . . .

*Id.,* 212 F.Supp. at 694.

In *Chute,* the United States was found liable for the wrongful deaths of guests on a yacht which sank in Nantucket Sound when it struck the wreck of a navy ship. Massachusetts had established marine

---

**1.** A marine league is approximately equal to the distance of three (3) nautical miles, so the crash occurred more than one marine league from the coast.

boundaries which included all of the sound. Yet, the court held:

> that the waters of Nantucket Sound beyond a marine league from either the shore of mainland Massachusetts (or Cape Cod) and the offshore islands are not territorial waters of Massachusetts for DOHSA purposes.

*Id.*, 466 F.Supp. at 65 (footnote omitted). The court's holding was based on its examination of the traditional rules and national acts which determine proper marine boundaries of a state, and its examination of the legislative history of DOHSA.

The present case is very similar to *Chute* and *Hooker*. Plaintiff has not formulated a persuasive reason to abandon existing precedent. Therefore, the court holds that the waters of the Gulf of Mexico beyond a marine league from the Florida shoreline are not territorial waters of Florida for the purpose of precluding a DOHSA action. This result best effectuates congression intent.

### B. The Two-Prong Test of Executive Jet

■ The proper application of the two-prong test of *Executive Jet* for DOHSA actions involving airplane accidents on the high seas is troublesome. The courts' holdings have often been in conflict. However, a recent Eleventh Circuit decision strongly suggests that even in DOHSA actions the two-prong test must be satisfied.

In *Teachey v. United States*, 363 F.Supp. 1197 (M.D.Fla.1973), the court dismissed a complaint without prejudice and with leave to file an amended complaint. The suit was based on a helicopter accident just off the coast of St. Petersburg. For guidance in drafting the amended complaint, the court stated:

> the complaint must be dismissed. However, the plaintiffs are certainly not foreclosed from proceeding on the merits. They may proceed under the Death on the High Seas Act if the crash occurred more than one marine league from shore....

*Id.*, 363 F.Supp. at 1199.

The court reached a different conclusion in *Hayden v. Krusling*, 531 F.Supp. 468 (N.D.Fla.1982). In *Hayden*, plaintiff's decedent was a passenger in a light aircraft flying round-trip from Pensacola, Florida, to New Orleans, Louisiana. During the return flight, the plane crashed into the Gulf of Mexico. It disappeared from the radar screen when it was 55 miles south of the northern shoreline of the Gulf of Mexico. *Id.*, 531 F.Supp. at 469.

Based on these facts, the court examined Florida's Wrongful Death Act and DOHSA to determine which statute controlled the action. The court concluded that "Florida's Wrongful Death statute is broad enough to encompass a death upon the high seas." *Id.* As to DOHSA, the court found that there was no significant relationship to traditional maritime activity as required by *Executive Jet*. Therefore, "plaintiff here has no cause of action arising from a maritime tort, no cause of action cognizable in admiralty, and no cause of action under DOHSA." *Id.*, 531 F.Supp. at 469–70.

Recently, the Eleventh Circuit reviewed the significance of *Executive Jet* in DOHSA actions. In *Miller v. United States*, 725 F.2d 1311 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984), the court considered a similar situation. In *Miller*, two men were killed while flying a private plane from the Bahamas to Palm Beach, Florida. The plane crashed forty miles southeast of West Palm Beach. The court stated that the issue was one of first impression in this circuit:

> the sole issue for resolution is whether land-based negligence resulting in an airplane crash into international waters is within admiralty jurisdiction.

*Id.*, 725 F.2d at 1312.

In resolving this issue, the court began with an examination of *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Most significantly the *Miller* court stated:

> The Supreme Court added a caveat to its holding on the specific facts of *Executive Jet*, stating in the now famous footnote 20:

'Of course, under the Death on the High Seas Act, a wrongful death action arising out of an airplane crash on the high seas *beyond a marine league* from the shore of a state may clearly be brought in a federal admiralty court.' *Executive Jet,* 409 U.S. at 271, n. 20, 93 S.Ct. at 506, n. 20 (emphasis added).

The specific significance of footnote 20, and the issue of when an alleged aviation tort bears a significant relationship to traditional maritime activity, has not yet been addressed by the Eleventh Circuit. *Id.,* 725 F.2d at 1313–14. The court then examined the case law from other circuits and concluded that admiralty jurisdiction was proper. *Miller* embraces the rationale of the Ninth and Fifth Circuits in suggesting that both prongs of *Executive Jet* must be satisfied. In fact, the court specifically noted that "a significant relationship to traditional maritime activity [existed] because the trip between the Bahamas and the United States has traditionally been accomplished by ship. . . ." *Id.,* 725 F.2d at 1315.

The rationale of *Miller* must be applied to the facts of this case. Here, the flight bore no relationship to traditional maritime activity. The trip was related to flight instruction. In fact, the sole purpose of the flight was to learn how to fly an aircraft—a function having no direct relationship to maritime activity. The training flight originated in Florida, stopped only in Florida cities, and was to conclude in Florida. The location of the accident was totally fortuitous. Thus, the facts of the cases simply do not support the application of admiralty jurisdiction and maritime law.

### C. *Concurrent Jurisdiction*

In *Alexander v. United Technologies Corp.,* 548 F.Supp. 139 (D.Conn.1982), the court found that DOHSA was not the exclusive remedy for an aircraft accident on the high seas. Instead, the court held that concurrent jurisdiction existed between the state wrongful death action and the federal DOHSA action. However, *Alexander* was decided by a Connecticut district court pri-

or to *Miller.* Based on *Miller's* rationale, concurrent jurisdiction cannot exist when the flight has no relationship to traditional maritime activity.

For the reasons expressed in this opinion, it is

ORDERED AND ADJUDGED that the motion of defendant, Hartzog Aviation, Inc., for summary judgment is GRANTED. It is FURTHER ORDERED that defendant Beech's motion for summary judgment is DENIED and plaintiff's motion is GRANTED. Thus, plaintiff may maintain an action under Florida's Wrongful Death Act.