Joan **PALISCHAK, Co–Executor of the Estate of J. Meade Williamson, Deceased, Plaintiff,**

v.

**ALLIED SIGNAL AEROSPACE COMPANY, Bendix/King General Avionics Division and the United States of America, Defendants,**

Joan **PALISCHAK, Co–Executor of the Estate of J. Meade Williamson, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 94–0178(JEI), 94–4768(JEI).**

United States District Court, D. New Jersey.

July 3, 1995.

Katherine Slavin, Philip Wolf, P.A., Haddonfield, NJ, for plaintiff.

Louis R. Moffa, Jr., Schnader, Harrison, Segal & Lewis, Cherry Hill, NJ, for defendant Allied Signal.

Robert Gross, U.S. Dept. of Justice, Washington, DC, for defendant U.S.

## OPINION

IRENAS, District Judge:

These are personal injury actions arising from plaintiff's decedent's airplane crash into the Atlantic Ocean. Defendant United States moves to dismiss *Palischak v. U.S.*, No. 94–cv–4768 (JEI), and defendants, Allied Signal and United States, move for partial summary judgment in *Palischak v. Allied Signal Inc.*, No. 94–cv–178 (JEI). For the reasons below, defendant United States' motion to dismiss will be denied and the two actions will be consolidated. Defendants' motion for partial summary judgment will be granted in part and denied in part.

## I.  FACTS

At approximately 12:16 p.m., on January 13, 1992, plaintiff's decedent, J. Meade Williamson, took off from Millville, New Jersey in a Cessna 421C airplane. Williamson intended to fly from Millville, New Jersey to Sebastian, Florida. At approximately 4:06 p.m., radar contact with Williamson was lost while he was flying over the Atlantic Ocean off the coast of Florida.

The following day, the right wing and other debris from the aircraft were located in the Atlantic Ocean approximately 20 miles off the coast of Florida.[1]  On March 2, 1992, the

---

1.  At approximately, 30°45′ north latitude, 81° west longitude.

main body of the wreckage was discovered 22 nautical miles off the coast of Florida.[2]

On January 11, 1994, plaintiff filed a claim against the United States Federal Aviation Administration pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2401 *et seq.* ("FTCA"). On January 12, 1994, plaintiff also commenced a suit in Federal court. That suit was docketed as 94–cv–178(JFG) and named both the United States and Allied Signal as defendants. Plaintiff alleged negligence by defendant United States, for the actions of its air traffic controllers. Plaintiff sued Allied Signal, the manufacturer of the Cessna's radar system, on theories of products liability. Plaintiff asserted several grounds for federal jurisdiction: admiralty jurisdiction, diversity of citizenship, and the United States as a party.

On September 28, 1994, after the denial of her FTCA administrative claim, plaintiff filed a second lawsuit against the United States. This second suit was also based on the negligence of the air traffic controllers, but this time alleged jurisdiction under the FTCA and was docketed as 94–cv–4768(JFG). The two cases were never consolidated.

The United States has filed a motion to dismiss the plaintiff's claims in *Palischak v. U.S.* based on lack of subject matter jurisdiction because plaintiff did not file suit within the applicable statute of limitations. Both defendants have moved for partial summary judgment in *Palischak v. Allied Signal Inc.* on four grounds. First, defendants argue that plaintiff is barred from claiming any damages under New Jersey's Wrongful Death Act. Second, defendants argue that plaintiff is barred from claiming any nonpecuniary damages under the Death On the High Seas by Wrongful Act statute ("DOHSA"), 46 U.S.C.App. § 761, *et seq.* Third, defendants argue that plaintiff is barred from maintaining a survival action. Finally, defendants argue that plaintiff is not entitled to a trial by a jury.

## II. ANALYSIS

### A. *Jurisdiction*

While both parties agree that this court has jurisdiction to hear this matter, the parties disagree as to the basis of this court's jurisdiction. The defendants contend that jurisdiction is based on admiralty, specifically on DOHSA. Plaintiff argues that jurisdiction is not based on admiralty, but instead, is based on diversity and because the United States is a defendant.

On its face DOHSA is applicable:

Whenever the death of a person shall be caused by wrongful act, neglect, or a default occurring on the high seas beyond a maritime league[3] from the shore of any state, ... the personal representative of the decedent may maintain a personal suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependant relative.

46 U.S.C.App. § 761.

The plaintiff argues that the two-pronged test set forth in the Supreme Court decision in *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), must be met before we can apply the provisions of DOHSA. The Court in *Executive Jet* held that for admiralty jurisdiction to exist, the court must find that the accident in question occurred on the high seas and that such accident has a nexus to traditional maritime activity. *Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504. Plaintiff argues that the mere fortuity that the plane crashed outside the three mile territorial limit of a state is not sufficient to establish admiralty jurisdiction.[4]

However, the maritime nexus requirement has been explicitly adopted only for torts

---

**2.** At 30°42.67' north latitude, 80°59.62' west longitude.

**3.** A maritime league is three nautical miles.

**4.** The accident at issue in this case would probably not satisfy the nexus requirement of *Executive Jet. See Executive Jet,* 409 U.S. at 266, 93 S.Ct.

at 503 ("In flights within the continental United States, which are *principally* over land, the fact that an aircraft happens to fall in navigable waters, rather than on land, is wholly fortuitous."). However, because we hold that DOHSA claims need not satisfy the two pronged requirement of *Executive Jet,* we need not decide this issue.

occurring on the navigable waters within the United States and not for torts occurring on the high seas. *Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504. Furthermore, in *Executive Jet* the Court stated that the nexus requirement only applies in the absence of a statute to the contrary. The Supreme Court in *Executive Jet* repeatedly and explicitly emphasized that DOHSA was such a statute.

> To the extent that the terms of the Death on the High Seas Act become applicable to such flights, that Act, of course, is "legislation to the contrary."

*Executive Jet,* 409 U.S. at 274 n. 26, 93 S.Ct. at 507 n. 26; *see also id.* at 271 n. 20, 93 S.Ct. at 506 n. 20. The Court also stated that:

> many actions for wrongful death arising out of aircraft crashes into the high seas beyond one maritime league from shore have been brought under the Death on the High Seas Act and federal jurisdiction has consistently been sustained in those cases. Indeed, it may be considered as settled today that this specific federal statute gives the federal admiralty courts jurisdiction of such wrongful death actions.

*Id.* at 263–64, 93 S.Ct. at 502 (footnote omitted).

Despite this clear language, plaintiff cites several subsequent lower court decisions which required a showing of significant maritime activity before applying DOHSA. *See, e.g., Miller v. United States,* 725 F.2d 1311 (11th Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984) (DOHSA provides jurisdiction over aviation accident between the United States and the Bahamas because there is a nexus to traditional maritime activities); *Kuntz v. Windjammer "Barefoot" Cruises, Ltd.,* 573 F.Supp. 1277 (W.D.Pa.1983), *aff'd,* 738 F.2d 423 (3d. Cir.), *cert. denied,* 469 U.S. 858, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984) (DOHSA provides jurisdiction over accident during cruise where there is a nexus to traditional maritime activities); *Brons v. Beech Aircraft Corp.,* 627 F.Supp. 230 (S.D.Fla.1985) (state law, not

DOHSA, applies to claims arising from an accident in which a plane traveling between two points in Florida crashed on the high seas).

Any confusion on this issue was cleared up when the Supreme Court issued its decision in *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). In *Tallentire* the Court made clear that admiralty jurisdiction is expressly provided under DOHSA whenever the accidental death occurred more than a maritime league off shore. *Id.* at 218, 106 S.Ct. at 2492. After the Court's decision in *Tallentire* lower federal courts have found that:

> the two-pronged test referred to in Executive Jet ... only applies in the absence of a statute to the contrary, and the Supreme Court in *Executive Jet* repeatedly and explicitly emphasized that DOHSA was such a statute ... therefore, the requirement of a traditional maritime nexus is not a prerequisite to the exercise of admiralty jurisdiction pursuant to DOHSA.

*Friedman v. Mitsubishi Aircraft Int'l,* 678 F.Supp. 1064, 1065 (S.D.N.Y.1988); *see also Kunreuther v. Outboard Marine Corp.,* 757 F.Supp. 633, 634 (E.D.Pa.1991) ("Having found that the death in question in this case occurred more than a league from United States' shores, the Court held that DOHSA was applicable.").[5] Thus, the requirement of a traditional maritime nexus is not a prerequisite to the exercise of admiralty jurisdiction pursuant to DOHSA.

■ DOHSA is the exclusive remedy where, as here, death results from an aviation accident on the high seas, and state wrongful death remedies are preempted outside the territorial waters of that state. *Tallentire,* 477 U.S. at 210, 106 S.Ct. at 2487–88; *Friedman,* 678 F.Supp. at 1065. The reasoning underlying DOHSA preemption is that "Congress sought uniformity when it enacted DOHSA, rather than the possibly disparate and inconsistent results that could follow a

---

**5.** We are unable to locate a single decision after *Tallentire* in which a lower court required a maritime nexus before applying DOHSA. Plaintiff has cited one case for the proposition that this issue is still unsettled. *See Icelandic Coast Guard v. United Tech. Corp.,* 722 F.Supp. 942,

946 (D.Conn.1989) ("The Supreme Court has not reached the question of whether a maritime nexus is required for torts on the high seas"). However, the court in *Icelandic Coast Guard* was not addressing a claim under DOHSA, but was instead addressing a claim for economic losses.

death on the high seas, if the federal courts were required to apply the substantive law of the several states." *Kuntz*, 573 F.Supp. at 1277.

■ If there were any doubt about DOHSA's preemption of state wrongful death actions at the time the parties prepared their initial briefs, it has been cleared up by the Third Circuit's recent opinion in *Calhoun v. Yamaha Motor Corp.*, 40 F.3d 622 (3d Cir. 1994). In *Calhoun* the Third Circuit stated:

> *Tallentire* [addressed] whether remedies available under a state wrongful death action could supplement the remedies available under DOHSA. The Court again said "no," holding that the Louisiana wrongful death statute (which allowed recovery for loss of society) could not apply to a claim governed by DOHSA.... Congress had spoken directly to the question of damages for deaths on the high seas in DOHSA, and the Court was not free to supplement the statutory scheme (with a state law remedy).

*Id.* at 634–35. Because DOHSA applies to the case at bar, the plaintiff's claims under the New Jersey Wrongful Death Act, *N.J.S.A.* § 2A:31–3 *et seq.*, are preempted.

### B. *Statute of Limitations*

■ While DOHSA supplies a cause of action for persons killed on the high seas, it does not by its terms permit suits against the United States or constitute a waiver of the government's sovereign immunity. Suits against the United States must be brought pursuant to a statute which waives sovereign immunity. Two such statutes are potentially applicable to the case at bar, the FTCA, and the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–52 ("SAA").

■ The FTCA and SAA do not create substantive causes of action, but are only waivers of sovereign immunity. The most important distinction between these two waiver statutes is in their statutes of limitations.

■ Under the SAA, suit must be brought within two years after the cause of action arises. 46 U.S.C.App. § 745. That is, the suit must be filed within two years from the date of the injury. *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *Bovell v. United States, Dept. of Defense*, 735 F.2d 755, 756–57 (3d Cir.1984). In contrast to the FTCA, the SAA does not require the submission of an administrative claim before bringing suit.[6] *See id.* at 756.

FTCA has a six year statute of limitations period under 28 U.S.C. § 2401(a) for the filing of an action. However, before filing suit under the FTCA plaintiff must file an administrative claim with an administrative agency. There is a two year limitations period provided in 28 U.S.C. § 2401(b) for the filing of this administrative claim.

■ In order to determine which statute of limitations applies in the case at bar we must determine which of the two waiver statutes applies.

The SAA provides as follows:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding may be brought against the United States.

46 U.S.C.App. § 742.

Courts have almost uniformly held that the SAA extends to the whole reach of admiralty jurisdiction. *See, e.g., Williams v. United States*, 711 F.2d 893 (9th Cir.1983); *McCormick v. United States*, 680 F.2d 345 (5th Cir.1982); *Szyka v. United States Secretary of Defense*, 525 F.2d 62 (2d Cir.1975). The SAA has specifically been held to include DOHSA claims against the United States for airplane accidents on the high seas. *See Williams*, 711 F.2d at 893. These decisions were based upon the 1960 amendment to the SAA which extended the statute to "the full

---

**6.** The statute of limitations in maritime actions is not tolled pending resolution of administrative claims erroneously filed pursuant to the FTCA. *Id.* at 756; *Williams*, 711 F.2d at 898–99; *T.J.*

*Falgout Boats, Inc. v. United States*, 508 F.2d 855, 858 (9th Cir.1974); *Roberts v. United States*, 498 F.2d 520, 526 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

range of admiralty cases" against the government. *S.Rep.* No. 1079, 92th Cong, 2d Sess., 1972 U.S.C.C.A.N. 3129, 3134 (1972); *see also S.Rep.* No. 1894, 86th Cong, 2d Sess., 1960 U.S.C.C.A.N. 3583 (1960). However, there is some confusion within the Third Circuit as to whether the SAA or the FTCA should apply to the kind of claim presented in this case.

The Third Circuit in *Jones & Laughlin Steel v. Mon River Towing, Inc.*, 772 F.2d 62 (3d Cir.1985), stated, in *dictum*, that the FTCA provides a basis for all admiralty claims not involving government vessels.[7] *Id.* at 66 (citing *Indian Towing v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955)). However, in *Andrews v. United States*, 801 F.2d 644 (3d Cir.1986), the Third Circuit stated, also in *dictum*, that the SAA is not limited to cases in which the United States is operating a vessel, but extends to any maritime claim where a private wrongdoer would be amenable to suit. *Andrews*, 801 F.2d at 645. Despite this change of course, nowhere in the Third Circuit's opinion in *Andrews* did the court address, or even mention, its earlier decision in *Jones & Laughlin Steel*. Nevertheless, based upon Congress's intent that the SAA should apply to the full range of admiralty cases against the government and the decisions of all other circuits that have addressed this issue, we believe the Third Circuit's *dictum* in *Andrews* to be the correct statement of the law. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 20–1 n. 8 (1994) (criticizing *Jones & Laughlin Steel* ). Therefore, we agree with the United States that the SAA is applicable in the case at bar.

■ The SAA and the FTCA are mutually exclusive waivers of sovereign immunity. That is, the FTCA excludes all claims against the United States which are governed by the SAA.[8] 28 U.S.C. § 2680(d); *Williams*, 711 F.2d at 897; *see also Jones & Laughlin Steel*, 772 F.2d at 65 (FTCA includes jurisdiction for torts committed by the govern-

ment except for those torts for which a remedy was provided by either the SAA or the PVA.).

Our decision to apply the SAA rather than the FTCA to the case at bar is largely academic because plaintiff has filed two suits, each of which satisfies one of the waiver statutes. The first lawsuit in this matter, 94–cv–178(JFG), was filed on January 12, 1994, within the two year statute of limitations period of the SAA. The second lawsuit in this matter, 94–cv–4768(JFG), was filed on September 28, 1994, after plaintiff filed a claim with the Federal Aviation Administration. While we usually discourage the filing of repetitive lawsuits, in this case it was prudent for plaintiff to satisfy the filing requirements of both the SAA and the FTCA, as she did, given the conflicting Third Circuit precedents. For the above reasons we will deny the motion to dismiss *Palishak v. United States*, 94–cv–4768(JEI), and consolidate the two actions to protect the plaintiff in the event that the Third Circuit should follow its decision in *Jones & Laughlin Steel.*

### C. Non-pecuniary Damages

■ Because DOHSA applies to the case at bar, plaintiff's claims for non-pecuniary wrongful death damages must be stricken. DOHSA specifically provides that the recovery allowed for wrongful death on the high seas "shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C.App. § 762; *see also Mobile Oil Corp. v. Higginbotham*, 436 U.S. 618, 623, 98 S.Ct. 2010, 2013–14, 56 L.Ed.2d 581 (1978).

### D. Survival Actions

■ Although plaintiff may not recover for non-pecuniary damages under DOHSA, she has also brought claims for conscious pain and suffering under the New Jersey Survival Act, *N.J.S.A.* § 2A:15–3, and, in the alternative under general maritime survival

---

7. Where the United States is operating a vessel, a third waiver statute, The Public Vessels Act (the "PVA"), 46 U.S.C.App. § 781–790, may also be applicable.

8. The FTCA, 28 U.S.C. § 2680, specifically states:

[t]he provisions of this chapter and section 1346(b) of this title shall not apply to—....
(d) [a]ny claim for which a remedy is provided by sections 741–752 [the SAA], 781–790 [the PVA] of Title 46, relating to claims or suits in admiralty against the United States.

law in conjunction with her DOHSA wrongful death claim. Survival claims and wrongful death claims are distinct grounds for recovery. Wrongful death claims redress the pecuniary losses suffered by the decedent's beneficiaries on account of the decedent's death. Survival claims, on the other hand, permit the decedent's estate to recover damages for personal injuries to the decedent for which the decedent could have brought suit had death not intervened. *See Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The issue here is whether the DOHSA claim preempts her survival claims.

From the late nineteenth century the general rule of maritime law provided that wrongful death actions were not actionable unless expressly allowed by state or federal statute. *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). By enacting DOHSA in 1920, Congress provided a federal ground of recovery for wrongful death occurring on the high seas. 46 U.S.C.App. § 761. However, for deaths that occurred in territorial waters, recovery was only permissible pursuant to state statutes. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 393, 90 S.Ct. 1772, 1783–84, 26 L.Ed.2d 339.

In 1970 the Supreme Court overruled the longstanding rule of *The Harrisburg* and held that general maritime law provided a cause of action for wrongful death in territorial waters. *Moragne,* 398 U.S. at 409, 90 S.Ct. at 1792. *Moragne* freed wrongful death actions from reliance upon inconsistent state wrongful death statutes and filled the legislative void that had arisen between the state laws and DOHSA. *Id.* at 399–400, 90 S.Ct. at 1786–88. Most importantly, *Moragne* promoted uniformity in maritime wrongful death law without regard to where the death occurred. *Id.* at 401–02, 90 S.Ct. at 1788.

After *The Harrisburg,* federal admiralty courts routinely applied state wrongful death statutes to provide relief. *Moragne* discarded this approach and held that where a maritime action for wrongful death is brought in federal court the court should apply general maritime law and not state wrongful death statutes. *Id.* at 408–09, 90 S.Ct. at 1791–92.

The application of maritime law in general, as opposed to a particular state statute, is evidenced by the Supreme Court's review of English common law, federal statutes, and all the relevant state statutes in *Moragne. Id.* at 381–83 and 390, 90 S.Ct. at 1777–79 and 1782.

Although *Moragne* involved application of a general maritime wrongful death law to torts occurring within the territorial limits of states, federal courts have analogized from *Moragne* and held that general maritime law encompassed a general maritime survival action which permitted recovery for nonpecuniary losses. *See Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 386–87 (5th Cir. 1987) (holding "it is entirely appropriate that the courts should fill what would otherwise be a legislative void by allowing [a] general maritime law survival action ... to supplement DOHSA"); *Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890, 892–94 (5th Cir.1984) (general maritime survival action may be used to supplement DOHSA); *Barbe v. Drummond,* 507 F.2d 794, 799–800 (1st Cir.1974) (holding that a general maritime law survival action for pain and suffering exists and is not barred by DOHSA); *McAleer v. Smith,* 791 F.Supp. 923, 926–29 (D.R.I.1992) (holding "plaintiffs may supplement their DOHSA claims with general maritime survival claims"); *Favaloro v. S/S Golden Gate,* 687 F.Supp. 475, 479–80 (N.D.Cal. 1987) (holding DOHSA does not preempt general maritime law survival actions). *But see In re Air Disaster Near Honolulu, Hawaii,* 792 F.Supp. 1541 (N.D.Cal.1990) (holding DOHSA preempts general maritime law survival action for nonpecuniary damages). Additionally, the Court's subsequent decision in *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), entailed a general discussion of wrongful death statutes as compared to specific state statutes. *Id.* at 575, n. 2 and 579–83, 94 S.Ct. at 810, n. 2 and 812–14. At least one court and commentator have interpreted *Moragne* and *Gaudet* as precluding the application of the statute of a particular state, as opposed to applying general maritime law. *See In re S/S Helena,* 529 F.2d 744 (5th Cir.1976); 2

Steven F. Friedell, *Benedict on Admiralty* § 81(e) (1995).

While the Third Circuit has held that DOHSA may be supplemented by a survival action, it continues to supplement DOHSA with state survival actions rather than by the general maritime law. *Dugas v. National Aircraft Corp.*, 438 F.2d 1386 (3d Cir.1971); *Kuntz*, 573 F.Supp. at 1283–86. In *Dugas* the Third Circuit stated, "the weight of opinion favors the view that relief may be granted under both the state survival statute and the DOHSA." *Dugas*, 438 F.2d at 1388. The court went on to hold that:

> A refusal to permit an award under the state survival statute will result in a distinction between the recovery which could be had on land and that on the high seas, a distinction which is unreasonable and unnecessary. Admiralty has remained flexible so as to be faithful to its tradition of granting the most equitable relief. Faithfulness to that tradition here warrants granting relief under the [State] Survival Act.

*Id.* at 1391–92 (footnote omitted).

We are bound to follow *Dugas* and apply the New Jersey Survival Act [9] rather than a survival action under general maritime law. Our decision to follow *Dugas* is supported by the Third Circuit's affirmance in *Kuntz v. Windjammer "Barefoot" Cruises*, 738 F.2d 423 (3d Cir.1984), *cert denied*, 469 U.S. 858, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984). In *Kuntz* the Third Circuit affirmed, without opinion, the district court's decision to follow *Dugas* and apply the Pennsylvania Survival Statute in conjunction with DOHSA. *Kuntz*, 573 F.Supp. at 1286. Therefore, although we feel the better view is that the survival action arises from general maritime law, based on *Dugas* and *Kuntz* we will apply the New Jersey Survival Act.[10]

A few years after *Dugas* the Supreme Court decided the case of *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). *Higginbotham* held that the measure of damages for a wrongful death action on the high seas was governed exclusively by DOHSA; therefore, only pecuniary loss was recoverable in a wrongful death action. *Id.* at 623–25, 98 S.Ct. at 2013–15. Defendants contend that this case as well as *Tallentire* and *Miles v. Apex Marine Corp*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), stand for the proposition that DOHSA preempts survival actions and, thus, limits plaintiff's damages to her pecuniary losses.

However, *Higginbotham* did not address whether a DOHSA claim could be supplemented by a survival action for conscious pain and suffering. The Court granted certiorari only on whether nonpecuniary damages could be recovered in a general maritime wrongful death action. *Id.* at 619–20, 98 S.Ct. at 2011–12. The Court stated in *Higginbotham*:

> [DOHSA] does not address every issue of wrongful-death law ... but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes mean-

---

**9.** No party has addressed the issue of our choice of law. When parties do not raise the issue of the applicability of foreign law, a court is under no obligation to apply foreign law and may instead apply the law of the forum. The Restatement (Second) of Conflicts provides:

> [W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own law except when to do so would not meet the needs of the case, or would not be in the interest of justice. The forum will usually apply its own law for the reason that in this way it can best do justice to the parties.... When both parties have failed to prove foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum.

RESTATEMENT (SECOND) OF CONFLICTS § 136, comment h, at 378–79 (1971). *See also Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006–07 (5th Cir.1990); *Commercial Ins. Co. of Newark v. Pacific–Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir.1977); *Pfizer v. Elan Pharm. Research Corp.*, 812 F.Supp. 1352 (D.Del.1993).

Furthermore, the court is without sufficient facts to make this decision *sua sponte*. Therefore, for purposes of this motion, we will assume that New Jersey law is applicable.

**10.** This is probably a distinction without a difference. Compare, the New Jersey Survival Act, *N.J.S.A.* § 2A:15–3, with *Barbe*, 507 F.2d at 799–800 (discussing remedies under general maritime survival action).

ingless.... There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. *Higginbotham,* 436 U.S. at 625, 98 S.Ct. at 2015.

Because of the distinction between survival actions and wrongful death actions, *Higginbotham* does not preclude the plaintiff from supplementing her DOHSA claims with survival claims. *Azzopardi,* 742 F.2d at 893–94; *McAleer v. Smith,* 791 F.Supp. 923, 927 (D.R.I.1992); *Brown v. United States,* 615 F.Supp. 391, 401 (D.Mass.1985), *aff'd,* 795 F.2d 76 (1st Cir.1986), *cert. denied,* 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989 (1987); *Kuntz,* 573 F.Supp. at 1286; *Chute v. United States,* 466 F.Supp. 61, 69–70 (D.Mass.1978).

In *Tallentire* the Supreme Court reiterated that DOHSA was the exclusive wrongful death remedy for a person's demise on the high seas, stating, "the conclusion that the state statutes are pre-empted by DOHSA where it applies is inevitable." *Tallentire,* 477 U.S. at 232, 106 S.Ct. at 2499. Thus, recovery for wrongful death on the high seas shall be governed exclusively by DOHSA, precluding all other wrongful death claims. The *Tallentire* Court expressly declined to address whether a DOHSA claim could be supplemented by a state survival statute applicable to the high seas. *Id.* at 215 n. 1, 106 S.Ct. at 2490 n. 1. (citing *Dugas* ).

*Miles v. Apex Marine Corp,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), involved a claim for the wrongful death of a seaman brought pursuant to the Jones Act. The Court held that a Jones Act claim did not preclude a general maritime wrongful death claim, stating:

> We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress.

*Id.* at 27, 111 S.Ct. at 323. However, the Court determined that loss of society was not recoverable as part of the general maritime wrongful death claim because the Jones Act limited wrongful death recovery to pecuniary loss. *Id.* at 32–33, 111 S.Ct. at 325–26. In addition, the Court stated that lost future income was not recoverable as part of a general maritime survival claim because the Jones Act survival provision limited recovery to losses suffered during decedent's lifetime. *Id.* at 36, 111 S.Ct. at 327–38. While noting that various federal circuit courts had developed a general maritime survival action from *Moragne,* the Court declined to address the existence of such a cause of action because resolution of this issue was unnecessary to the Court's holding. *Id.* at 34, 111 S.Ct. at 326–27.

Finally, the defendants contend that Congress intentionally omitted a survival provision from DOHSA while including one in the Jones Act. However, we view the lack of a survival provision in DOHSA and the inclusion of one in the Jones Act as an indicator of Congress's intention not to preempt survival actions. The absence of a survival provision in DOHSA creates a legislative void that may be filled by the courts without undermining the limitations set by DOHSA. *Higginbotham,* 436 U.S. at 625, 98 S.Ct. at 2015; *McAleer,* 791 F.Supp. at 928; *Kuntz,* 573 F.Supp. at 1285. Permitting a survival action to supplement DOHSA does not produce a conflict because Congress chose to address only wrongful death actions in DOHSA. *McAleer,* 791 F.Supp. at 928; *see also Kuntz,* 573 F.Supp. at 1285 (discussing legislative history of DOHSA). Because DOHSA is a wrongful death statute which does not address survival of actions, it is entirely appropriate that the courts should fill what would otherwise be a legislative void by allowing survival actions to supplement DOHSA. *Azzopardi,* 742 F.2d at 894.

### E. *Jury Trial*

■ Admiralty claims, including those for conscious pain and suffering, and DOHSA claims are generally tried by the court sitting without a jury. 46 U.S.C.App. § 761 (DOHSA action brought as one "in admiralty"); Fed.R.Civ.P. 38(e) (no right to jury in admiralty case); *see also Tallentire v. Offshore Logistics, Inc.,* 800 F.2d 1390, 1391 (5th Cir. 1986) (because DOHSA provides a remedy in admiralty, admiralty principles are applicable and a DOHSA plaintiff has no right to a jury

trial of wrongful death claims); *McAleer*, 791 F.Supp. at 931–31 (no jury trial on DOHSA claims even where some plaintiffs presented Jones Act claims); *Heath v. American Sail Training Ass'n*, 644 F.Supp. 1459, 1471–72 (D.R.I.1986) (no jury trial for DOHSA claims); *Friedman*, 678 F.Supp. at 1065–66 (no jury trial for DOHSA claims).

However, plaintiff correctly points out that nothing in the Constitution's grant of admiralty jurisdiction or in any statute or rule of procedure expressly forbids jury trial. *See Fitzgerald v. United States Lines*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). DOHSA does not necessarily preclude a jury trial. *Peace v. Fidalgo Island Packing Co.*, 419 F.2d 371, 372 (9th Cir.1969) (comparing the explicit prohibition of jury proceedings in the SAA). As the Supreme Court stated, "[w]hile this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them." *Fitzgerald*, 374 U.S. at 20, 83 S.Ct. at 1650.

In *Fitzgerald*, the Supreme Court addressed the situation where jury triable issues are joined with issues that are usually tried to the court. The Court held that "[requiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge, unduly complicates and confuses a trial.... In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate, outdated, and wasteful manner of trying these cases." *Fitzgerald*, 374 U.S. at 18–20, 83 S.Ct. at 1649–50. The Court found that the Seventh Amendment did not forbid jury trials in admiralty or maritime cases. One trier of fact should decide "what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." *Id.* at 21, 83 S.Ct. at 1650.

In cases where plaintiffs have joined survival actions to their DOHSA claims courts have generally allowed all claims to be tried to a jury. *See, e.g., In Re Korean Air Lines Disaster of September 1, 1983*, 798 F.Supp. 750, 754–55 (D.D.C.1992); *In re Air Crash Disaster Near Honolulu, Hawaii on February 24, 1989*, 783 F.Supp. 1261, 1266 (N.D.Cal.1992); *Favaloro v. S/S/ Golden Gate*, 687 F.Supp. 475, 481 (N.D.Cal.1987); *Red Star Towing & Transportation Co. v. The Cargo Ship "Ming Giant"*, 552 F.Supp. 367, 371 (S.D.N.Y.1982). However, such a solution is impossible in the case at bar because the SAA specifically provides that plaintiff may bring "any appropriate non-jury proceeding" against the United States. 46 U.S.C.App. § 742. Both parties agree that this wording precludes plaintiff from having a jury hear her claims against the United States. *See also Peace*, 419 F.2d at 372. This statutory obstacle prevents us from following *Fitzgerald* and submitting all of plaintiff's claims to a jury. *Fitzgerald*, 374 U.S. at 20, 83 S.Ct. at 1650.

█ Thus, in the case at bar, plaintiff has a constitutional right to a jury on one of her claims (the state survival action), while all her claims against the United States must, by statute, be tried to the court without a jury. Her remaining claims, the DOHSA suit against Allied Signal, may be tried by either the court or a jury.[11] Our solution to this dilemma is to bifurcate the trial, pursuant to Fed.R.Civ.P. 42(b), which provides:

> Rule 42. Consolidation; Separate Trials
> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed.R.Civ.P. 42(b).

In the case at bar, we will first conduct a bench trial of all issues in which plaintiff is not entitled to a jury. That is, the court sitting without a jury will decide plaintiff's DOHSA claims against Allied Signal and the United States. Thereafter, if necessary, the

---

**11.** This problem is created by the Third Circuit's rule that the plaintiff has a state survival action rather than a survival action arising under general maritime law. In most circuits the entire case could be heard by a judge sitting without a jury. *See* discussion at pp. 348–49, *supra*.

court will conduct a jury trial on plaintiff's claims under the New Jersey survival statute, with respect to all issues not decided by the previous bench trial. As to any survival action against the United States, the jury verdict will only be advisory, under Fed. R.Civ.P. 39(c), and the court will make its own findings under Fed.R.Civ.P. 52. To cover the possibility that on appeal the Third Circuit will reject *Kuntz*, and find that the plaintiff only has a general maritime survival action, the court will also make its own findings under Fed.R.Civ.P. 52 with respect to the survival action against Allied Signal.[12]

## III. CONCLUSION

For the reasons above, defendant United States's motion to dismiss will be denied, and the two actions will be consolidated. Defendants' summary judgment motion to bar plaintiff from claiming any damages under New Jersey's Wrongful Death Act is granted. Defendants' summary judgment motion to bar plaintiff from claiming any non pecuniary damages under DOHSA is also granted. Defendants' summary judgment motion to bar plaintiff from maintaining a survival action is denied. Finally, defendants' summary judgment motion to deny the plaintiff a trial by a jury is denied as to plaintiff's claims against Allied Signal under the New Jersey Survival Act and granted as to all other claims except to the extent that the court may employ an advisory jury, pursuant to Fed.R.Civ.P. 39(c), on certain claims. An appropriate order will issue on even date herewith.

---

12. We foresee four possible results at the end of the bench trial; plaintiff may prevail in her claims against both defendants, plaintiff may prevail against Allied Signal but not against the United States, plaintiff may prevail against the United States but not against Allied Signal, or defendants may prevail on all claims.

If plaintiff prevails in her claims against both defendants, we will submit the issue of damages on the survival action to a jury. The jury's decision regarding damages will be binding against Allied Signal but only advisory as to the United States. *See* Fed.R.Civ.P. 39(c).

If plaintiff prevails against Allied Signal but not against the United States, we will submit the issue of damages on the survival action to a jury. The jury's decision regarding damages will, of course, be binding.

If plaintiff prevails against the United States but not against Allied Signal, we will not submit the survival action to a jury, and the court sitting without a jury will determine damages.

If defendants prevail on all claims tried to the court, there will be no need for the court or a jury to consider the survival action because of the *res judicata* effect of our prior decision on liability.